143 N.J. Super. 134 (1976)
362 A.2d 1204
JANE DOE, A. A., B. B., C. C., D. D., E. E., AND F. F., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
ANN KLEIN, COMMISSIONER, DEPARTMENT OF INSTITUTIONS AND AGENCIES; MORRIS FOYE, ADMINISTRATOR, GREYSTONE PARK PSYCHIATRIC HOSPITAL; FRANK FENNIMORE, M. D., MEDICAL DIRECTOR, GREYSTONE PARK PSYCHIATRIC HOSPITAL; MIKHAIL ROTOV, M. D., ACTING DIRECTOR, DIVISION OF MENTAL HEALTH AND HOSPITALS, DEPARTMENT OF INSTITUTIONS AND AGENCIES; RICHARD WINANS, DIRECTOR OF PERSONNEL, GREYSTONE PARK PSYCHIATRIC HOSPITAL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1976.
Decided July 2, 1976.
*136 Before Judges HALPERN, CRANE and MICHELS.
Ms. Laura M. LeWinn, Deputy Director, Division of Mental Health Advocacy, argued the cause on behalf of appellants (Mr. Stanley C. Van Ness, Public Advocate, attorney).
Mr. David S. Baime, Deputy Attorney General, argued the cause on behalf of respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Donald G. Collester, Jr., Morris County Prosecutor, joined in the brief submitted on behalf of respondents.
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiffs appeal by leave of this court from an interlocutory order of the Law Division denying their motion for discovery of the minutes of the testimony heard by the Morris County Grand Jury pertinent to that body's presentment on Greystone Park Psychiatric Hospital (Greystone).
The Division of Mental Health Advocacy of the Department of the Public Advocate, representing several unnamed plaintiffs who are patients or who were patients at Greystone, instituted this class action on behalf of said plaintiffs and all indigent patients presently confined at Greystone over the age of 18 years and all such patients who shall become *137 so confined during the pendency of this action, to enjoin defendants from administering treatment and maintaining conditions in a manner allegedly in violation of the constitutional and statutory rights of said plaintiffs. The principal thrust of the charge is that defendants have deprived plaintiffs of a tolerable living environment, protection from physical harm and their right to basic standards of decency. Defendants are also charged with failing to accord plaintiffs proper treatment, as required by the Federal and State Constitutions and state statutes.
On November 14, 1974, prior to the filing of the complaint in this action, the Morris County Grand Jury commenced an investigation pertaining to the management and operation of Greystone. The initial focus was the investigation of charges that patients had been beaten and otherwise mistreated by institution employees. The allegations were made by a group of student psychologists who had resigned from their positions at the institution, and were publicly aired in a series of newspaper articles which appeared in the Newark Star Ledger. The student psychologists charged that patient abuse was widespread and that supervisory authorities had failed to investigate, punish the guilty parties and assert control necessary to prevent recurrence of such acts. In addition, important areas of investigation other than the specific allegations by these student psychologists were undertaken as a result of information obtained and presented to the grand jury by an undercover agent working in Greystone under authority of the Commissioner of Institutions and Agencies, the Attorney General and the Morris County Prosecutor. The investigation became focused upon the question whether the patients' basic right to treatment and sympathetic general care was being respected at Greystone.
The grand jury conducted its investigation for six months, examining approximately 300 exhibits, many of them printed material of great length and requiring expert testimony which was ultimately received. Witnesses at every level of employment at Greystone were examined, including maintenance *138 personnel, attendants, nurses, psychologists, clinical psychiatrists, union leaders and middle and high-level administrators. The Commissioner of Institutions and Agencies and many of her assistants testified. Present and former patients in the institution, qualified experts in the field of psychiatry and hospital administration, and others who could be helpful in the proper discharge of the grand jury investigation, also testified. In all, 83 witnesses appeared and testified. In addition, the grand jury had available for examination transcripts of the testimony presented at the hearings of the Joint Subcommittee on Mental Health of the Senate and General Assembly, which hearings resulted from the charges leveled by the student psychologists. The Joint Subcommittee subsequently issued a report recommending comprehensive changes in operating procedures employed at Greystone.
The grand jury investigation eventually culminated in the return of four indictments and a lengthy presentment which severely criticized the management of Greystone. Five individuals were indicted and were charged with criminal conduct, which included charges of possession of controlled dangerous substances with intent to distribute, sodomy of a former patient, attempted sodomy, Medicaid fraud and obtaining money by false pretenses. The presentment criticized many aspects of the hospital's management, including deficiency in administration, the lack of effective personnel policies, professional nonfeasance on the part of the staff psychiatrists, physical assault on patients by nursing personnel and the failure to respect the statutory mandate of adequate and humane care and treatment as prescribed by N.J.S.A. 30:4-24.1. After returning the indictments and the presentment, the grand jury was terminated on May 29, 1975.
Following the filing of the complaint in this action, the Deputy Director of the Division of Mental Health Advocacy moved on behalf of plaintiffs to compel discovery of (1) *139 the minutes of all testimony before the Morris County Grand Jury pertinent to that body's presentment on Greystone, (2) the names and addresses of all persons called as witnesses before the grand jury, and (3) all written documents, photographs and other physical exhibits submitted to the grand jury. Judge Ard denied plaintiffs' motion for discovery of the grand jury testimony, stating in part:
I am denying this motion for the reasons stated or stating that in my judgment the traditional policy of secrecy of the Grand Jury minutes is not outweighed by the consequences of nondisclosure to the plaintiffs in this case. The fact of the matter is that the plaintiffs in this case have, as I have recited, been given tremendous latitude with respect to discovery and, as I say, absent a cogent reason, will continue to receive great latitude with respect to discovery to properly martial [sic] the evidence in order to present to the Court its strongest case.
In addition there are people I imagine who were brought before the Grand Jury, who were perhaps under suspicion at the time, were investigated during this Grand Jury session and exonerated, and I feel that their reputations are certainly in jeopardy if I release this. Let me say categorically that this is such a multi-legged creature I do not believe that I can set up a practical workable limitation which would allow me to grant your request * * *.
Thirdly, of course we can only speak theoretically now, but there is also the possibility of retribution of some sort against witnesses who testify before the Grand jury [sic] feeling safe in the thought that their testimony would not subsequently be divulged to others, and I feel very strongly that the effectiveness of future Grand Juries in terms of their ability to thoroughly delve into matters and participate in the questioning of various people who appear and testify before the Grand Jury may be deterred if * * * it becomes general knowledge that these things can be revealed in civil actions and I feel that there may be an impairment of the effectiveness of our entire Grand Jury system.

* * * * * * * *
The other items of discovery sought were agreed upon. The Attorney General and the Morris County Prosecutor agreed to furnish plaintiffs with the names and addresses of all persons called as witnesses before the grand jury, with the exception of the student psychologists and three patients at Greystone unless said patients consented to the disclosure of their names, and with a list of all the documents, photographs *140 and other exhibits viewed by the grand jury. This appeal followed.
The important issue raised by this appeal is whether material presented to a grand jury during the course of a lengthy criminal investigation may be disclosed to civil litigants.
Grand jury proceedings are traditionally secret. See United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077, 1081 (1958). The reasons for grand jury secrecy were summarized in United States v. Rose, 215 F.2d 617 (3 Cir.1954), as follows:
* * * (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. [at 628-629]
See also State v. Clement, 40 N.J. 139, 143 (1963); State v. DiModica, 40 N.J. 404, 409-410 (1963). See also 38 Am. Jur.2d, Grand Jury, § 39 at 984.
The concept of the secrecy of the grand jury has been maintained by our rules of criminal procedure. R. 3:6-7, provides in pertinent part:
* * * the requirement as to secrecy of proceedings of the grand jury shall remain as heretofore, and all persons other than witnesses, permitted by R. 3:6-6 to be present while the grand jury is in session, shall be required to take an oath of secrecy before their admission thereto. Such oath shall also be taken by typists making transcripts of testimony given before the grand jury.
However, the secrecy of grand jury proceedings is not absolute. It has long been the rule in this State that proceedings *141 before a grand jury may be disclosed if justice so requires. State v. Clement, supra, 40 N.J. at 142; State v. Moffa, 36 N.J. 219, 223 (1961); In re Presentment of Camden Cty. Grand Jury, 34 N.J. 378, 395, 401 (1961); In re 15th Essex Cty. Grand Jury, 111 N.J. Super. 564, 568-569 (App. Div. 1970). See also State v. Farmer, 45 N.J. 520, 521-522 (1965), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). Thus, our courts have lifted the veil of secrecy on being satisfied in the circumstances of a particular case that the policy of secrecy should be subordinate to the search for the whole truth. See, for example, State v. Farmer, 48 N.J. 145, 152 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); State v. Clement, supra; State v. Moffa, supra; State v. Mucci, 25 N.J. 423 (1957). R. 3:13-3(a) (3) now makes available the grand jury testimony to all defendants in criminal cases. The rules of civil procedure do not contain a comparable provision granting litigants in civil cases access to grand jury testimony.
At the heart of the problem is the conflict between the sound policy of the secrecy of grand jury proceedings and the concept that discovery in civil cases should be liberally granted so that the search for truth and justice may be facilitated. Ultimate resolution of the conflict depends upon a reconciliation of these competing values. In our view the conflict can be best resolved by requiring civil litigants to demonstrate compelling circumstances or need warranting disclosure of grand jury testimony. This accords with the principles enunciated by the United States Supreme Court in United States v. Procter & Gamble Co., supra, and Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323, 1326-1327 (1959). These decisions clearly establish that the disclosure of grand jury minutes may be ordered when there is a showing of special and compelling circumstances sufficient to overcome the policy against disclosure. In United States v. Procter & Gamble Co., supra, the Supreme Court reversed an order of the United *142 States District Court for the District of New Jersey which granted the motion of defendant for discovery and production of the transcript of the grand jury investigation in a civil antitrust suit stating, in pertinent part:
* * * [w]e start with a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts. See United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546, 1555; Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397, 401. The reasons are varied. One is to encourage all witnesses to step forward and testify freely without fear of retaliation. The witnesses in antitrust suits may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers. The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow. This "indispensable secrecy of grand jury proceedings," United States v. Johnson, supra (319 U.S. at 513, 63 S.Ct. at 1238), must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity.
No such showing was made here. The relevancy and usefulness of the testimony sought were, of course, sufficiently established. If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done. Modern instruments of discovery serve a useful purpose, as we noted in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. They together with pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. Id., 329 U.S. at 501, 67 S.Ct. at 388. Only strong public policies weigh against disclosure. They were present in Hickman v. Taylor (US) supra, for there the information sought was in the trial notes of the opposing lawyer. They are present here because of the policy of secrecy of grand jury proceedings. We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly. [356 U.S. at 681, 682, 78 S.Ct. at 986, 2 L.Ed.2d at 1081-1082]
Other courts have followed these principles. See Baker v. United States Steel Corp., 492 F.2d 1074 (2 Cir.1974); *143 Allis-Chalmers Mfg. Co. v. City of Fort Pierce, Florida, 323 F.2d 233 (5 Cir.1963); In re Holovachka, 317 F.2d 834 (7 Cir.1963); Corona Construction Co. v. Ampress Brick Co., Inc., 376 F. Supp. 598 (N.D. Ill. 1974); Hancock Brothers, Inc. v. Jones, 293 F. Supp. 1229 (N.D. Cal. 1968); Consolidated Edison Co. of N.Y. v. Allis-Chalmers Mfg. Co., 217 F. Supp. 36 (S.D.N.Y. 1963); Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 211 F. Supp. 729 (N.D. Ill. 1962); City of Philadelphia v. Westinghouse Electric Corp., 210 F. Supp. 486 (E.D. Pa. 1962).
Plaintiffs have failed to demonstrate compelling circumstances or need warranting disclosure of the grand jury minutes. Plaintiffs have been furnished with the names and addresses of all witnesses, with certain limited exceptions, who appeared before the grand jury. To date no effort has been made to take the depositions of these witnesses. More importantly, there is nothing in the record to suggest that these witnesses will be uncooperative, or that they do not recall evidence of vital importance on essential issues, or that they will furnish information contrary to that furnished by them to the Grand Jury. If this occurs in the future course of this case, then clearly there would be the compelling circumstances or need justifying disclosure. See United States v. Procter & Gamble Co., supra at 356 U.S. 682, 78 S.Ct. 987, 2 L.Ed.2d 1082; Atlantic City Electric Co. v. A.B. Chance Co., 313 F.2d 431, 434 (2 Cir.1963).
While we agree that the furnishing of the transcripts of the grand jury testimony might save substantial time and expense, nevertheless, this alone does not warrant the lifting of the veil of secrecy accorded grand jury proceedings. See United States v. Procter & Gamble Co., supra; Corona Construction Co. v. Ampress Brick Co., Inc., supra. Accordingly, we are satisfied that in the circumstances the trial judge properly denied plaintiffs wholesale access to the minutes of the grand jury testimony
We are of the view that the result reached here does not conflict with our holding in Viruet v. Sylvester, 131 N.J. *144 Super. 599 (App. Div. 1974), certif. den. 68 N.J. 138 (1975), where we reversed the trial court's refusal to permit plaintiff in a wrongful death action to obtain defendant's grand jury testimony, a request based on a newspaper story suggesting that defendant's testimony at trial was different from that given by him before the grand jury. The grand jury had returned a "no bill," and for all material purposes the criminal matter was at an end, and the search for the truth outweighed the necessity for grand jury secrecy. Clearly, the compelling circumstances or need for the grand jury testimony was there established.
Accordingly, the order of the Law Division denying plaintiffs' motion for discovery of the minutes of the testimony heard by the Morris County Grand Jury pertinent to that body's presentment on Greystone is affirmed without prejudice to plaintiffs' or defendants' right to apply to the trial court for disclosure of such testimony under its supervision in the event that compelling circumstances or need are established by subsequent events during the course of this litigation.