230 N.J. Super. 22 (1989)
552 A.2d 628
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ARACE BROTHERS, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1988.
Decided January 13, 1989.
*25 Before Judges J.H. COLEMAN, DEIGHAN and BAIME.
Mark Paul Cronin, Deputy Attorney General, argued the cause for appellant (W. Cary Edwards, Attorney General, attorney for appellant; Mark Paul Cronin and Gerard C. Sims, Jr., Deputy Attorney General, of counsel and on the brief).
Barry S. Goodman argued the cause for respondents, Joint Defense Effort (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross; Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein; Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade; Wilentz, Goldman & Spitzer; Schwartz, Tobia & Stanziale; Kimmelman, Wolff & Samson, attorneys for Joint Defense Effort; Barry S. Goodman on the brief). No briefs were filed on behalf of defendants C. Egan & Sons, Cresencio Meile t/a Joseph Meile & Sons, Ralph Marangi & Co., Ralph Marangi, Franklin Raso and Joseph Marangi.
The opinion of the court was delivered by BAIME, J.A.D.
This case presents novel questions of public concern. In State v. Doliner, 96 N.J. 236 (1984), our Supreme Court held that attorneys in the Department of Law and Public Safety assigned to represent other governmental agencies may not automatically obtain disclosure of State Grand Jury materials for use in a civil suit, but instead must seek a court order predicated upon a strong showing of "particularized need." Id. at 241. The Court did not address the issue concerning the use of such materials, in the civil phase of a dispute, by a deputy attorney general who himself assisted in the presentation of the *26 matter to the grand jury. Today, we decide that open question. Additionally, we consider whether a deputy attorney general may actively engage in civil litigation while simultaneously participating in the parallel presentation of the criminal aspects of the case to the grand jury.

I.
The salient facts are not in dispute. This appeal arises from a civil antitrust suit instituted by the State against 105 named corporate and individual defendants. The gist of the complaint is that the defendants and their co-conspirators, over the course of 25 years, engaged in a massive combination in restraint of trade, by establishing and allocating among themselves what can loosely be characterized as "property rights" in the bidding for municipal and other public contracts involving commercial, industrial and residential customers in derogation of the public policy of promoting competition. In various related counts, the State contends that defendants' conspiratorial conduct violated the New Jersey Antitrust Act (N.J.S.A. 56:9-1 et seq.). Among other remedies, the State seeks the assessment of treble damages, the imposition of fines and civil penalties and injunctive relief.
It is undisputed that Gerard C. Sims, Jr., a deputy attorney general in the Division of Criminal Justice assigned to the antitrust section, prepared and signed the civil complaint.[1] *27 Sims also participated in a State Grand Jury investigation which focused upon the criminal aspects of the same subject matter. Although the precise chronology of events is not altogether clear, it would appear that the parallel civil and grand jury investigations were conducted simultaneously, with some personnel assigned to both. While it is plain that the civil investigation was far more extensive, the grand jury probe ultimately resulted in the indictment of five defendants named in the civil complaint.[2] As a result of this civil investigation, another individual, a former public official, entered a plea of guilty to a criminal accusation.
In any event, the civil complaint was filed on October 18, 1984. Shortly thereafter, defendants moved to dismiss the complaint for failure to state a claim (R. 4:6-2(e)) and for abuse of the grand jury process. We need not concern ourselves with the former ground, which was summarily rejected by the trial court and forms no part of the present appeal. The issues raised here center upon defendants' contention that the State manipulated the grand jury's powerful investigative tools to root out additional evidence useful in the civil dispute and that Sims, by simultaneously participating in both investigations, had unfettered access to materials which should have been shrouded by the veil of secrecy historically attendant to such criminal proceedings. Following the submission of voluminous affidavits and oral argument, the trial court found that there had been no abuse of the grand jury process. Although the court determined that the assignment of Sims to both the civil and grand jury investigations was improper, it concluded that the complaint was not tainted by this impropriety. In order to guard against possible future derelictions, the court ordered that none of the parties was to have access to any of the *28 materials, documents or exhibits presented to the grand jury except upon motion and a strong showing of particularized need. We thereafter denied defendants' motion for leave to appeal. Defendants' subsequent applications to the New Jersey Supreme Court and the United States Supreme Court, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), were similarly rejected.
On April 21, 1987, the United States Supreme Court rendered its decision in United States v. John Doe, Inc. I, 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987). We will discuss that decision at some length later in our opinion. It is enough to say at this point, the Supreme Court held that Rule 6(e) of the Federal Rules of Criminal Procedure did not require a government attorney involved in a grand jury investigation to obtain a court order before making continued use of grand jury materials in a civil proceeding. 481 U.S. at 115, 107 S.Ct. at 1664, 95 L.Ed.2d at 110. Based upon the Supreme Court's holding, the State sought reconsideration of the trial judge's decision, barring Sims from having access to the grand jury exhibits and materials. Following argument, the trial court rendered an oral opinion in which it determined that United States v. John Doe, Inc. I, supra, was inapplicable because it pertained solely to the construction of a federal procedural rule.
We, thereafter, granted the State's motion for leave to appeal and scheduled the matter for argument on an expedited basis. We are in complete accord with the trial court's conclusion that a deputy attorney general who presents a matter to the grand jury may not have continued access to grand jury materials without first obtaining a court order upon a showing of particularized need. Although not absolutely essential to our precise holding, we find no impropriety in the assignment of a deputy attorney general to conduct both the civil and criminal investigation of suspected antitrust violations. However, before using the grand jury materials in the parallel civil investigation or litigation, the deputy attorney general must obtain a "turnover" order. We consider these questions seriatim.

*29 II.
We first address the State's argument that a deputy attorney general who presents a matter to the grand jury may have continued access to all grand jury materials for use in a parallel civil proceeding without obtaining a court order. The State's contention is grounded upon the thesis that the public policy considerations favoring grand jury secrecy are not subverted when the same attorney is engaged in parallel civil and criminal investigations. It is argued that R. 3:6-7, which mandates the "secrecy of proceedings of the grand jury," does not contain a prohibition against the continued use of information by attorneys who legitimately obtained access to such materials through the grand jury investigation.
We begin with the well-settled principle that disclosure of grand jury minutes may be ordered for use in a civil suit only "when there is a showing of special and compelling circumstances" sufficient to overcome the public policy considerations which undergird the principle of grand jury secrecy. Doe v. Klein, 143 N.J. Super. 134, 141 (App.Div. 1976). Although this rule is of fairly recent vintage in New Jersey, see River Edge Savings & Loan Ass'n v. Hyland, 165 N.J. Super. 540 (App.Div. 1979), certif. den. 81 N.J. 58 (1979); Doe v. Klein, supra, it has its genesis in a long line of United States Supreme Court decisions. See, e.g., Illinois v. Abbott & Associates, Inc., 460 U.S. 557, 566-567, 103 S.Ct. 1356, 1360-1361, 75 L.Ed.2d 281, 289-290 (1983); Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156, 167 (1979); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323, 1326 (1959); United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, 1081 (1958). See also Illinois v. Sarbaugh, 552 F.2d 768, 774 (7th Cir.1977), cert. den. sub nom. J.L. Simmons Co. v. Illinois, 434 U.S. 889, 98 S.Ct. 261, 54 L.Ed.2d 174 (1977); U.S. Industries, Inc. v. United States District Court, 345 F.2d 18, 21 (9th Cir.1965), cert. den. 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965); 1 C. Wright, Federal Practice & *30 Procedure, § 106 at 173 (1969). See also State v. Doliner, supra, 96 N.J. at 244-245. The doctrine permitting disclosure of grand jury materials upon a showing of particularized need constitutes a reasonable accommodation of "competing [social] values," see Doe v. Klein, supra, 143 N.J. Super. at 141, and has been applied in a variety of related contexts. See, e.g., Loigman v. Kimmelman, 102 N.J. 98, 111-112 (1986); McClain v. College Hosp., 99 N.J. 346, 351 (1985).
As we noted at the outset of our opinion, our Supreme Court in State v. Doliner, supra, held that the "particularized need" standard was applicable even in cases in which the party seeking disclosure of grand jury materials was a government department which sought to use the information in the prosecution of a civil case. Id. 96 N.J. at 241. The Court reasoned that prosecutors might be tempted to manipulate the grand jury's broad investigative powers if they knew their colleagues could have unfettered access to otherwise secret materials for use in a parallel civil suit. Id. at 245. Finding no governing rule or statute, the Court determined that "disclosure to government attorneys other than prosecutors must be subject to" judicial approval. Id. at 246. The standard adopted by the Court was "a strong showing of particularized need that outweighs the interest in grand jury secrecy." Ibid. In this context, the Court added that "[g]overnment attorneys and agencies must make the same showing as civil litigants." Ibid.
In Doliner, the Court emphasized that its decision was not in any sense novel, but instead was in accord with principles recently adopted by the United States Supreme Court. The Court specifically referred to United States v. Sells Engineering, Inc., 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), which had been decided only nine months before. There, the United States Supreme Court adopted the "particularized need" standard in determining that Justice Department attorneys were required to seek a court order for access to grand jury materials for use in a civil suit. 463 U.S. at 443, 103 S.Ct. at 3148, 77 L.Ed.2d at 764. In Doliner, it was stressed that *31 "since the principles that underlie federal and state grand jury secrecy are identical, and since our courts have previously looked to federal precedent for guidance, our standards should be harmonized where possible." 96 N.J. at 246.
The State seizes upon this language in its argument that we should now adopt the holding of the United States Supreme Court in United States v. John Doe, Inc. I, supra. There, as we have previously pointed out, the Court refused to apply the "particularized need" standard where the same Justice Department attorney presented the criminal aspects of a suspected Sherman Act (15 U.S.C. § 1) price-fixing violation to a grand jury and later assisted in the preparation of a parallel civil suit. The trial court determined that the John Doe decision was inapplicable because it pertained solely to the construction of Rule 6(e) of the Federal Rules of Criminal Procedure.[3] We *32 agree. It is manifest from our careful reading of the decision in John Doe that the Supreme Court's holding was confined to the construction of a federal procedural rule. That this is so is best evidenced by the following quoted passages:
[i]t seems plain to us that Rule 6(e) prohibits those with information about the workings of the grand jury from revealing such information to other persons who are not authorized to have access to it under the Rule. The Rule does not contain a prohibition against the continued use of information by attorneys who legitimately obtained access to the information through the grand jury investigation. [481 U.S. at 108, 107 S.Ct. at 1660, 95 L.Ed.2d at 105].
* * * * * * * *
Because we decide this case based on our reading of the Rule's plain language, there is no need to address the parties' arguments about the extent to which continued use threatens some of the values of grand jury privacy identified in our cases and catalogued in Sells Engineering. [Citation deleted]. While such arguments are relevant when language is susceptible of more than one plausible interpretation, we have recognized that in some cases `[w]e do not have before us a choice between a `liberal' approach toward [a Rule], on the one hand, and a `technical' interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says.' [Citations deleted]. [481 U.S. at 109, 107 S.Ct. at 1660, 95 L.Ed.2d at 106].
Because the John Doe decision was predicated solely on the construction of a plainly worded federal procedural rule, and since there is no New Jersey counterpart to Rule 6(e), we are obliged to address whether continued, unrestricted access to grand jury materials by the deputy attorney general who presented the matter threatens the values of grand jury secrecy or the integrity of the grand jury as an institution. In our view, important public policy considerations strongly militate in favor of judicial intervention and supervision.
*33 As we pointed out in State v. Murphy, 213 N.J. Super. 404 (App.Div. 1986), aff'd 110 N.J. 20 (1988), "[t]he triadic relationship between the courts, the prosecutor and the grand jury has been the source of much litigation." Id. at 409. See, e.g., State v. Doliner, supra; State v. Vinegra, 73 N.J. 484 (1977); State v. Hilltop Private Nursing Home, Inc., 177 N.J. Super. 377 (App.Div. 1981); State v. Shamberg, 146 N.J. Super. 559 (App. Div. 1977), certif. den. 75 N.J. 10 (1977); State v. Hart, 139 N.J. Super. 565, 567-568 (App.Div. 1976). By virtue of the grand jury's character as an inquisitional agency, "there are few[,] if any[,] other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence." United States v. Sells Engineering, Inc., supra, 463 U.S. at 433, 103 S.Ct. at 3142, 77 L.Ed.2d at 758. In this respect, it has been said that "a grand jury is not an officious meddler." In re Addonizio, 53 N.J. 107, 124 (1968). The grand jury "may investigate upon its own suggestion, and in addition to indictments for crimes it may return `presentments' upon conditions of public interest even though no violation of a penal statute is found." Ibid. Persons may be summoned to testify, even in the absence of pending charges. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). The exclusionary rule is inapplicable in the grand jury context, United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), as is the usual requirement of reasonableness of a subpoena to appear. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).
We emphasize that these exceptional powers are wielded not on behalf of the prosecutor, but in aid of the grand jury as an "arm of the court." Levine v. United States, 362 U.S. 610, 617, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989, 995 (1960), reh den. 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 (1960). See also In re Jeck, 26 N.J. Super. 514, 519 (App.Div. 1953), certif. den. 13 N.J. 429 (1953). Thus, we said in State v. Murphy, supra, that "`while the grand jury is not and should not be [a] captive of *34 any of the three branches,' [quoting United States v. Chanen, 549 F.2d 1306, 1312 (9th Cir.1977), cert. den. 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977)], it nevertheless exercises its powers under the authority and supervision of the judiciary." Id. 213 N.J. Super. at 410. See also United States v. Stevens, 510 F.2d 1101 (5th Cir.1975). The point to be stressed is that the information generated by the grand jury's inquiry is "not the property of the Government's attorneys, agents or investigators, nor are they entitled to possession of them in such a case. Instead, those documents are the records of the court." United States v. Procter & Gamble, supra, 356 U.S. at 684-685, 78 S.Ct. at 988, 2 L.Ed.2d at 1083.
Against this backdrop, we perceive no justifiable reason to exempt prosecuting attorneys from the requirement of obtaining a "turnover" order predicated upon a showing of particularized need when they seek to use grand jury materials in civil investigations or litigation. Rather, we are of the view that unrestricted access to grand jury materials by the deputy attorney general who presented the matter to the grand jury raises many of the same concerns that underlie the rule of secrecy in other contexts. Granting the deputy attorney general a license to rummage freely through the records of a grand jury renders considerably more concrete the threat to the willingness of witnesses to come forward and testify fully and candidly. If a witness knows or fears that his or her testimony before the grand jury will be routinely available for use in governmental civil litigation or administrative action, he or she may well be less inclined to speak freely. Further, unrestricted access poses a significant threat to the integrity of the grand jury as an institution. An errant prosecutor might well succumb to the strong temptation to use the grand jury as an investigative device for civil or administrative purposes. Of course, we do not mean to impugn the integrity of prosecuting attorneys. Nor do we suggest that abuse of the grand jury process is now, or otherwise would be, widespread. However, we are not blind to the fact that, while our government is one *35 of laws, it is run by men and women, subject to human frailties. If and when grand jury abuse does occur, it would often be difficult to detect and prove. Finally, unrestricted access would permit government attorneys to circumvent whatever disclosure limitations presently exist in our civil discovery rules. In that sense, unsupervised use of grand jury materials would grant to the State a virtual ex parte form of civil discovery. Although we recognize the broad investigative authority conferred by statute upon the Attorney General respecting antitrust investigations, see N.J.S.A. 56:9-9, we are convinced that the extraordinary powers of the grand jury should be confined to the accomplishment of its historical task.
These concerns for the integrity of the grand jury are far less worrisome when the attorneys seeking to obtain materials must go before a court and demonstrate a particularized need. As part of the inquiry, the court may properly consider whether the circumstances disclose any evidence of grand jury abuse. See, e.g., United States v. John Doe, Inc. I, supra, 481 U.S. at 112, 107 S.Ct. at 1662, 95 L.Ed.2d at 109. Although particularized need is best evaluated by examining the character of the materials sought, see State v. Doliner, supra, 96 N.J. at 248, one of the paramount concerns of the court must be to insure that the grand jury process is not improperly manipulated. The fact that a court is involved in this manner lessens some of the usual difficulties in detecting grand jury abuse. Moreover, the requirement of court supervision undoubtedly has a prophylactic effect in preventing abuses that might otherwise occur.
Conversely, we are satisfied that the requirement of obtaining a "turnover" order will not unduly burden a deputy attorney general who, having presented a matter to the grand jury, seeks to use grand jury materials for civil or administrative purposes. The governing standard, particularized need, is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." United States v. *36 Sells Engineering, Inc., supra, 463 U.S. at 445, 103 S.Ct. at 3149, 77 L.Ed.2d at 766. In United States v. Procter & Gamble Co., supra, the United States Supreme Court identified the appropriate factors to be considered.[4] Since the State never sought a "turnover" order in this case, we have no occasion to determine what would or would not be a proper exercise of judicial discretion. However, we point out that nothing in any of the decisions we have cited requires a court to pretend that there are no differences between governmental bodies and private parties. See United States v. Sells Engineering, Inc., supra, 463 U.S. at 445, 103 S.Ct. at 3149, 77 L.Ed.2d at 766. For example, a court might reasonably consider that use of grand jury materials by a government attorney "poses less risk of further leakage ... than would disclosure to private parties or the general public." Ibid. So too, under the particularized need standard, a court may properly weigh the public interest, if any, served by the use of grand jury materials by a governmental body. Ibid. We do not suggest any special dispensation from the particularized need standard for government attorneys. Nevertheless, we would be myopic were we not to recognize that, in certain cases, there might be public interest considerations peculiar to government movants which strongly militate in favor of continued access to grand jury materials.
*37 Before leaving the subject, we emphasize what we perceive to be the limited contours of judicial inquiry in determining whether or not an attorney who has presented a matter to the grand jury should be permitted to have continued access to grand jury materials. Our secrecy rules are designed to prohibit those with information about the workings of the grand jury from revealing such information to other persons who are not authorized to have access to it. It may be seen at once that the interests of grand jury secrecy are less offended by the use of materials by an attorney who properly obtained access to the information through the grand jury investigation. For there to be a disclosure, grand jury matters must be disclosed to someone. Surely, in terms of the interests of grand jury secrecy, a "disclosure" does not, for example, embrace a solitary re-examination of material in the privacy of an attorney's office. Where the attorney making the application was the individual who conducted the grand jury investigation, the issue presented is not one of "disclosure" as such. Instead, the question raised relates to continued "access" or use of the grand jury materials.
To that extent, the court in determining the question of particularized need should be less concerned with the interests of grand jury secrecy. Rather, when the concerns for secrecy are not implicated, the court's inquiry should focus upon whether the grand jury process has been or is being abused in order to gather evidence for use in civil or administrative proceedings. As we have pointed out, the automatic availability of grand jury material for civil or administrative use creates a temptation to utilize the grand jury's investigative powers to generate evidence useful in civil litigation. If anything, there is even more motivation for such misuse when the prospective beneficiary in the civil context would be the prosecutor, as opposed to some other governmental attorney. The principal evil to be guarded against is the temptation to employ the grand jury as a civil investigative unit. Therefore, the proper *38 subject of judicial inquiry should be whether the circumstances disclose any evidence of grand jury abuse.
Having said this, we do not envision an exhaustive and far-ranging investigation into the prosecuting attorney's motives. Rather, it must be recognized that "[a]s the consideration justifying secrecy becomes less relevant, a party asserting a need for grand jury materials will have a lesser burden in showing justification." Douglas Oil Co. v. Petrol Stops North-west, supra, 441 U.S. at 223, 99 S.Ct. at 1675, 60 L.Ed.2d at 167. "[I]f the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, the party seeking [access] should not be required to demonstrate a large compelling need." U.S. Industries, Inc. v. United States Dist. Ct., 345 F.2d 18, 21 (9th Cir.1965), cert. den. 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). All that is generally necessary is a showing that the grand jury's investigative powers were not or are not being improperly employed to generate additional evidence useful in the civil suit or administrative proceeding.
We stress that wide discretion must be afforded to the trial court in making this determination. Balancing the competing interests "is a delicate task for [the] courts." State v. Doliner, supra, 96 N.J. at 250. The court must seek to "ensure that grand juries have the power to either `ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution,' [citation deleted] and that these powers are not subverted to unauthorized ends." Ibid., quoting United States v. Sells Engineering, Inc., supra, 463 U.S. at 445, 103 S.Ct. at 3138, 77 L.Ed.2d at 752. The court's determination should turn upon objective criteria, including (1) the stated purpose of the grand jury investigation, (2) whether the grand jury proceedings are ongoing and, if so, whether an indictment is likely, (3) if the grand jury investigation has been *39 completed, whether an indictment was returned[5] and (4) whether there is any evidence that the grand jury was manipulated to obtain or generate evidence non-germane to its investigation. Id. 96 N.J. at 251. In the final analysis, the court must seek to strike a balance between the need for continued access to grand jury materials and the interest of the integrity of the grand jury as an institution.
We thus hold that the requirement of a court order predicated upon a showing of particularized need fully applies where the deputy attorney general seeking access to evidence generated by a grand jury investigation either himself presented the matter to the grand jury or assisted in such presentation.

III.
Although not vital to our decision, all parties have requested that we address the "core" or "pivotal" question whether a deputy attorney general may actively engage in civil litigation while simultaneously participating in the presentation of the criminal aspects of the case to the grand jury. Ordinarily, we would decline to consider an issue not essential to our disposition of an appeal. Cf. In the Matter of the Association of Trial Lawyers of America, New Jersey, and Chapter 197 of the Laws of 1987, 228 N.J. Super. 180 (App.Div. 1988). Here, however, the question is inextricably entwined with the issue of grand jury secrecy and will undoubtedly recur with some frequency. We thus choose to resolve the question.
*40 We recognize that the assignment to a civil case of the same attorney who simultaneously participates in a parallel grand jury investigation pertaining to the same subject, to some extent, threatens the values underlying the principle of grand jury secrecy. This does not end the inquiry, however. The question that must be asked is whether the public benefits of such an assignment outweigh the dangers created thereby. Cf. United States v. John Doe, Inc. I, supra, 481 U.S. at 112, 107 S.Ct. at 1662, 95 L.Ed.2d at 108. The public purposes served by the joint assignment  efficient, effective and even-handed enforcement of New Jersey's Antitrust Act  are certainly valid.[6] Such a course may have the effect of saving the State, the potential defendants and witnesses the pains of costly and time-consuming depositions and interrogatories. Limited State resources can be effectively marshalled and preserved. The public can obtain the full benefit of attorneys, investigators and agents having expertise in the complex area of antitrust law.
Under these circumstances, we cannot fairly say that such an assignment constitutes an unlawful disclosure of grand jury matters. As we have observed, for there to be a disclosure, the information must be disclosed to someone. We do not believe that an attorney's knowledge of facts learned from his grand jury participation can be equated with an unlawful disclosure on what would otherwise be secret information. Rather, *41 the principle of grand jury secrecy cannot be construed to stretch that far.
As we noted previously, the question presented is of first impression in New Jersey. Our research discloses only one federal decision bearing upon the issue. In United States v. Archer-Daniels-Midland Co., 785 F.2d 206 (8th Cir.1986), cert. den. 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987), the Court of Appeals for the Eighth Circuit held that the assignment of a Justice Department attorney to parallel civil and grand jury investigations of suspected price fixing did not constitute a violation of Rule 6(e). See also United States v. John Doe, Inc. I, supra. Although the Archer decision is by no means directly on point, it lends support to the result we reach today.
We are convinced that the dangers incident to the assignment of the same deputy attorney general to parallel civil and grand jury investigations of possible antitrust violations are substantially reduced by the necessity of obtaining a "turnover" order before grand jury materials can be used. It is one thing for a deputy attorney general to recollect what has occurred in the grand jury room. It is quite another for the deputy attorney general to have unrestricted use of evidence, documents and exhibits generated by a grand jury investigation.
We thus hold that the same deputy attorney general may simultaneously participate in both civil and grand jury investigations of suspected antitrust violations. However, before the same deputy attorney general may have continued access to grand jury materials to be used in the parallel civil investigation or litigation, the State must obtain a "turnover" order available on a showing of particularized need as outlined in this opinion. Where the grand jury proceedings are ongoing, the State may make an ex parte application to the court in order to preserve the confidentiality of the criminal investigation. Otherwise, notice of the application should be given to appropriate parties.

*42 IV.
It is undisputed that the State never sought a "turnover" order in this case. Consequently, we remand the matter to the Law Division to permit the deputy attorney general to apply for access to the grand jury materials and for further proceedings consistent with this opinion.
NOTES
[1] The executive powers of the State are organized into "not more than twenty principal departments." N.J. Const. (1947), Art. V, § IV, par. 1. One of these is the Department of Law and Public Safety, which is further organized into divisions, including the Division of Law, N.J.S.A. 52:17B-3, and the Division of Criminal Justice, N.J.S.A. 52:17B-99. Although the antitrust section is in the Division of Criminal Justice, it is responsible for prosecuting both civil and criminal antitrust litigation. See N.J.S.A. 56:9-6 and N.J.S.A. 56:9-13. There is no demarcation of these civil and criminal functions in the section. The same personnel participate equally in both civil and criminal aspects of antitrust investigations and litigation. See N.J.S.A. 56:9-11 and N.J.S.A. 56:9-12. Expenses incurred by the Attorney General in the administration of the Antitrust Act are paid from a revolving fund. N.J.S.A. 56:9-19.
[2] The five defendants subsequently named in the civil complaint are Angelo Miele & Sons, Inc., John A. Pinto, Carmine Pucillo, C. Pucillo & Sons, Inc. and Frank Stamato & Co., Inc. Apparently, two of the defendants were eventually convicted.
[3] Rule 6(e) provides, in relevant part, as follows:

Recording and Disclosure of Proceedings.
* * * * * * * *
(2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligations of secrecy may be imposed on any person except in accordance with this rule....
(3) Exceptions
(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to 
(i) an attorney for the government for use in the performance of such attorney's duty; and
(ii) such government personnel ... as are deemed necessary ... to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.
(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government the in performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury ... with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation to secrecy under this rule.
(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made 
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury[.]
[4] The purposes underlying grand jury secrecy include:

(1) To prevent the escape of those whose indictment may be contemplated;
(2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment, or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. [United States v. Procter & Gamble, supra, 356 U.S. at 681 n. 6, 78 S.Ct. at 986 n. 6, 2 L.Ed.2d at 1081 n. 6 (quoting United States v. Rose, 215 F.2d 617, 628-29 (3d Cir.1954))].
[5] Where the grand jury has returned an indictment, the defendant is entitled to obtain a transcript of the recorded proceedings. R. 3:13-3(a)(3). In such a case, we assume that the prosecuting attorney has retained a copy of the transcript. If for some reason, he or she has not done so, we discern no reason why he or she should be denied a transcript for his or her use in civil or administrative proceedings. On the other hand, where the grand jury proceedings have concluded and a "no bill" has been returned, the first three factors underlying grand jury secrecy identified in United States v. Procter & Gamble, supra, 356 U.S. at 681 n. 6, 68 S.Ct. at 986 n. 6, 2 L.Ed.2d at 1081 n. 6, "almost invariably disappear." State v. Doliner, 96 N.J. at 247.
[6] We note that unlawful combinations in restraint of trade have long plagued the solid waste removal industry. See, e.g., State v. Scioscia, 200 N.J. Super. 28 (App.Div. 1985), certif. den. 101 N.J. 277 (1985). In fact, the Solid Waste Utility Control Act of 1970 (N.J.S.A. 48:13A-1 et seq.) and the New Jersey Antitrust Act were jointly recommended to cope with this problem. See Frederick B. Lacey, United States Attorney for the District of New Jersey, Recommendation to the 1970 Session of the Legislature Concerning Legislation Which Might Be Enacted to Curb the Power and Influence of Organized Crime in New Jersey (Jan. 20, 1976). See also New Jersey State Commission of Investigation, Report Relating to the Garbage Industry of New Jersey (Oct. 7, 1969). Effective enforcement of our antitrust laws, in both the civil and criminal arenas, is decidedly in the public interest.