IN THE MATTER OF THE ALLEGATIONS OF OFFICIAL
MISCONDUCT IN THE CITY OF ELIZABETH
CONTAINED IN THE CITIZEN ON 6/11/88.

Superior Court of New Jersey
Appellate Division

Argued March 14, 1989—Decided June 5, 1989.

Before Judges ANTELL, BROCHIN and CONLEY.

*Raymond R. Beam, Jr.*, argued the cause, for appellant.

*Steven J. Kaflowitz*, Assistant Prosecutor, argued the cause for respondent (*John H. Stamler*, Union County Prosecutor, attorney, *Steven J. Kaflowitz*, of counsel and on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Samuel H. Rodriguez appeals from an order of the Law Division dated October 11, 1988, directing that a transcript of his testimony before the Union County Grand Jury on August 24, 1988, be released to the Mayor of the City of Elizabeth "and thereafter to the public." The order was issued on application of the Union County Prosecutor neither to serve the purpose of any pending civil or criminal judicial proceeding nor to support the allegations of a grand jury presentment, but only to shed light on the veracity of statements made by Rodriguez during the course of a political campaign. By our orders dated October 11 and October 19, 1988, the order under review was stayed pending this appeal. The material facts follow.

Rodriguez, a councilman of the City of Elizabeth, challenged the incumbent mayor, Thomas Dunn, in a Democratic primary election scheduled for June 7, 1988. On June 1, 1988, a political advertisement paid for by the "Committee to Elect Sam Rodriguez" entitled "Truthfully Speaking," appeared in the county newspaper. Among other things it stated the following:

The past twenty-four years have been filled with the corruption and scandals of the Dunn Administration. He put his son on the City payroll, rewards his friends with tax breaks and lives a very good life on City taxes and an

overflowing campaign treasury. Sam Rodriguez will restore ethics and honesty to City government. While Elizabeth has come to be known as the "Drug Capital of the East" Dunn lets drug pushers sell drugs on our streets and in our schools! It took him twenty four years, until an election year, to create a Narcotics Division in our Police Department. Sam Rodriguez will expand the police role and make sure it has the resources to get drugs off our streets and out of our schools. * * * It is time to end the corruption, the payoffs, and the scandals. The Dunn years have been costly and embarrassing. On June 7, elect a new team with new ideas. With Sam Rodriguez as Mayor, and Dexter Martin, Jack McKenna and "Mike" Guarino, Councilmen at Large, we can restore ethics and honesty to Elizabeth.

On June 8, 1988, following the election, in which Mayor Dunn prevailed, a local daily newspaper published an article written about Rodriguez in which the following excerpts appeared:

"Tom Dunn and his machine had the money to buy, the power to intimidate," Rodriguez said, prompting cheers and shouts of "Amen." "His votes were very, very expensive. He had to deceive the people."

      *       *       *       *       *       *       *       *

When asked if he would pursue corruption allegations against Dunn as he promised earlier, Rodriguez said, "We will substantiate any allegations we made." Rodriguez said he would let his attorney decide how to proceed with the charges.

On June 14, 1988, Rodriguez was quoted in a local daily newspaper as stating that the advertisement which appeared on June 1 was drafted without his approval, but that he would assume responsibility for it, "just like a father whose son is making a mistake is responsible for the child's actions." He was also quoted as saying "I did not necessarily mean it was the 'capital.' I probably meant to say Elizabeth is one of the cities that has one of the largest drug problems of the East." The article also stated that Mayor Dunn had called upon the Union County Prosecutor to investigate Rodriguez' allegations.

Following two invitations by the prosecutor, to which he did not respond, Rodriguez was subpoenaed to appear before the grand jury on August 24, 1988. The testimony which he gave before that body is the subject of the order under review.

Before applying to the court for a disclosure order on September 14, 1988, the prosecutor asked Rodriguez to consent to public disclosure of his testimony. The following extract from

the prosecutor's letter to Rodriguez requesting such consent makes clear his purpose in seeking disclosure:

Because of the unusual interest in this matter displayed by the media and because it involves a controversial political campaign or race, I think it is only fair to both sides—you and Mayor Dunn—that the transcript be furnished to you and Mayor Dunn and thereafter made public so as to avoid any unfair inferences of impropriety that may have been attributed to either of you by each of you, supporters of both of you, or just members of the public having an interest in the published allegations.

Giving as its principal reason that "[t]he public is entitled to know, given the nature of the allegations," the Law Division granted the prosecutor's motion.

■ The grand jury is "an arm of the court and therefore an essential part of the administration of justice." *In re Camden County Grand Jury,* 10 *N.J.* 23, 64 (1952) (quoting 3 *Proceedings of the New Jersey Constitutional Convention of 1947,* 188–190). As the sword and the shield of the criminal justice system, the grand jury serves the "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 *U.S.* 665, 686–687, 92 *S.Ct.* 2646, 2659, 33 *L.Ed.*2d 626, 643 (1972). *See also United States v. Sells Engineering, Inc.,* 463 *U.S.* 418, 423, 103 *S.Ct.* 3133, 3137, 77 *L.Ed.*2d 743, 752 (1983). To carry out its dual function, it enjoys extraordinary inquisitorial and investigative powers, and its proper functioning depends significantly upon the concept of secrecy in its proceedings. It is "as important for the protection of the innocent as for the pursuit of the guilty." *United States v. Johnson,* 319 *U.S.* 503, 513, 63 *S.Ct.* 1233, 1238, 87 *L.Ed.* 1546, 1555 (1943), reh'g den., 320 *U.S.* 808, 64 *S.Ct.* 25, 88 *L.Ed.* 488 (1943). *See R.* 3:6–6, 7, 8. Yet, as case law and the rules governing criminal practice make clear, the principle of secrecy in grand jury proceedings is not absolute. It is said to rest on the following policies:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the

witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. [*State v. Doliner*, 96 *N.J.* 236, 247 (1984) (quoting *United States v. Procter & Gamble Co.*, 356 *U.S.* 677, 681 n. 6, 78 *S.Ct.* 983, 986 n. 6, 2 *L.Ed.*2d 1077, 1081 n. 6 (1958)).]

*See also State v. Arace Bros.*, 230 *N.J.Super.* 22, 36 n. 4 (App.Div.1989); *Doe v. Klein*, 143 *N.J.Super.* 134, 140 (App. Div.1976).

Where, as here, the foregoing reasons for secrecy are absent, a highly relevant factor in deciding an application to disclose grand jury testimony is whether or not disclosure serves to further abuse of the grand jury system. "A court should carefully consider allegations of abuse; such allegations are relevant to the disclosure decision." *State v. Doliner, supra,* 96 *N.J.* at 249. *See also State v. Arace Bros., supra,* 230 *N.J.Super.* at 37–38.

The question before us is unique in that disclosure has been ordered for its own sake alone, for no purpose other than to inform the public as to what, if anything, Rodriguez said in support of his published allegations. Other cases which have considered the question of disclosure are limited to instances in which the testimony was needed for a pending judicial or administrative proceeding. In *Viruet v. Sylvester*, 131 *N.J.Super.* 599 (App.Div.1975), certif. den. 68 *N.J.* 138 (1975), the court held that in a wrongful death action the plaintiff administratrix was entitled to a copy of defendant's grand jury testimony, where the defendant was not indicted and where the request was based on a newspaper account which differed from testimony given by the defendant at trial. In reversing the Law Division's denial of the application, the court allowed discovery on the reasoning that the plaintiff's search for the truth in that judicial proceeding should not be unduly circumscribed. 131 *N.J.Super.* at 603.

In *Doe v. Klein, supra,* 143 *N.J.Super.* 134, a class of litigants suing on behalf of psychiatric patients to enjoin employees of Greystone Park Psychiatric Hospital from violating plaintiffs' rights, applied for a transcript of testimony received by a grand jury which returned a number of indictments and a presentment criticizing Greystone management. The motion was denied on the grounds that the reputations of witnesses who had testified might be jeopardized and that the effectiveness of the grand jury system would be impaired if witnesses could not rely on the assurance that their testimony would remain secret. The Appellate Division affirmed, framing the decision as reconciling "the conflict between the sound policy of the secrecy of grand jury proceedings and the concept that discovery in civil cases should be liberally granted so that the search for truth and justice may be facilitated." *Id.* at 141. Plaintiffs had urged that disclosure would save substantial time and expense in preparing for trial. *Id.* at 143. However, the court found that plaintiffs failed to demonstrate "compelling circumstances" sufficient to lift "the veil of secrecy accorded grand jury proceedings." *Ibid.*

In *State v. Doliner, supra,* the Supreme Court formulated as a standard for government attorneys seeking disclosure for purposes of civil suit "a strong showing of particularized need that outweighs the interest in grand jury secrecy." 96 *N.J.* at 246. It also stated that disclosure should "be consistent with both the policies furthered by grand jury secrecy and the deterrence of abuse of grand jury process." *Id.* at 256. Thereafter, in *State v. CPS Chemical Co., Inc.,* 198 *N.J.Super.* 236 (App.Div.1985), app. den. 105 *N.J.* 502 (1985), the Appellate Division granted disclosure of grand jury testimony given by other defendants in a separate but related prosecution. Its decision was based on the relevance of grand jury proceedings to the prosecution at hand "and the unavailability of the information therein contained by other methods." *Id.* at 245.

More nearly akin to this case is the application considered by the Law Division in *State v. Kearney,* 109 *N.J.Super.* 502 (Law

Div.1970). There, a nationally distributed magazine had published an article criticizing the Passaic County prosecutor's handling of certain criminal cases which ended in the acquittal of all defendants. The prosecutor asserted that the article was inaccurate and that unless public disclosure was made of the material considered by the grand jury, the unanswered article would "seriously undermine public confidence in law enforcement in Passaic County." *Id.* at 504. Acknowledging that disclosure of the materials might be appropriate if the prosecutor or members of his staff were prosecuting a libel action or defending a malicious prosecution suit, Judge Crane nevertheless concluded that public disclosure, merely for its own sake, to serve an essentially private purpose, was impermissible. The opinion concluded with the following language:

> Should a properly constituted investigatory body seek access to the grand jury proceedings and materials gathered in the course of the prosecutor's investigation, a different question would be presented. Since the matter of disclosure of grand jury proceedings is discretionary, *United States v. Socony Vacuum Oil Co.*, 310 *U.S.* 150, 60 *S.Ct.* 811, 84 *L.Ed.* 1129 (1940); *United States v. Rose, supra* [215 *F.*2d 617 (3 Cir.1954)], suffice it to say that an insufficient basis has been presented in this instance to move the discretion of the court. [109 *N.J.Super.* at 507.]

From the foregoing authorities there has emerged a somewhat plastic standard which seeks to reconcile the demands of justice with fundamental grand jury policy. It premises that grand jury testimony, absent a special rule or extraordinary circumstances, may be used only to serve the Inquest's basic function of investigating and acting upon allegations of crime. Its focus first rests on whether the information will serve a legitimate judicial or *quasi*-judicial purpose. That the traditional reasons for secrecy are absent in a particular case does not of itself authorize disclosure. What is required is an affirmative showing of such good cause that displaces the *policy* of secrecy. Accordingly, even where application is made for disclosure to government agencies for use in civil prosecution, there must be "a strong showing of particularized need that outweighs *the public interest in secrecy of the grand jury proceedings.*" *State v. Doliner, supra,* 96 *N.J.* at 241.

(Emphasis supplied). Also required is the assurance that the material sought was not obtained during a grand jury's departure from its historic mission. Thus, where the evidence is needed for a civil prosecution by the State, we have said that "[t]he principal evil to be guarded against is the temptation to employ the grand jury as a civil investigative unit. Therefore, the proper subject of judicial inquiry should be whether the circumstances disclose any evidence of grand jury abuse[,]" *State v. Arace Bros., supra,* 230 *N.J.Super.* at 37–38, so that there must be a "showing that the grand jury's investigative powers were not or are not being improperly employed to generate additional evidence useful in the civil suit or administrative proceeding." *Id.* at 38. Based on these concerns, we have even gone so far as to restrict continued access to grand jury material for purposes of civil suit by the same government attorneys who presented the evidence to the grand jury. *Id.* at 37.

■ The purpose for which disclosure of the Rodriguez testimony is sought is unrelated to any pending or prospective judicial or *quasi*-judicial proceeding. It serves only to release information which, in the prosecutor's view, may be of public interest.

Ostensibly, the purpose of bringing Rodriguez before the grand jury was to inquire into the basis of his campaign claims of crime in the City of Elizabeth and corruption in the municipal administration. Having heard his testimony, three options were then open to the grand jury: (1) to return an indictment, (2) to return a presentment reporting the results of its investigation and (3) to extend its investigation. It does not appear that any of these choices were made. Instead, within three weeks of Rodriguez' appearance, and around two months before the general election, the prosecutor requested his consent to the publication and distribution of a transcript of his testimony.

While we do not question the right of the grand jury to investigate Rodriguez' allegations, *State v. Arace Bros., supra,* 230 *N.J.Super.* at 33, the disclosure of his testimony, unaccompanied by any grand jury action and without any suggestion of serving a pending judicial or *quasi*-judicial proceeding or a legitimate government investigation, raises questions that cannot be ignored as to whether the real purpose of the inquiry in the first place was to ferret out crime or simply to gather and disseminate information. Indeed, absent an accompanying presentment, we do not even have the assurance that disclosure is compatible with the wishes of the grand jury whose independent investigation it was and which heard the testimony. For all that appears, its failure to file a presentment may well reflect a preference that the proceedings before it remain secret, and that nothing in the public interest requires otherwise.

The prosecutor maintains that disclosure furthers the cause of "fundamental fairness." Whether or not this is so, we know of no legal authority to monitor the moral tone of public elections by bringing a political candidate before a grand jury to substantiate under oath charges made during a campaign, and then publicly disclosing that witness' testimony. Our cachet upon such a practice would legitimate a prosecutorial power which could be too easily bent to serve the cause of political partisanship by wrongly invoking grand jury powers for "unauthorized ends." *State v. Doliner, supra,* 96 *N.J.* at 250. It requires no great exercise of imagination to visualize how such a vehicle could be used by a prosecutor to embarrass one political candidate to the advantage of another, thereby undermining public confidence in the grand jury as an impartial, apolitical body. *See, e.g.,* Comment, *Federal Grand Jury Investigation of Political Dissidents,* 7 *Harvard Civil Rights—Civil Liberties Law Review* 432 (1972), dealing with abuse of grand jury process for political reasons.

In *New York Times Co. v. Sullivan,* 376 *U.S.* 254, 270, 84 *S.Ct.* 710, 721, 11 *L.Ed.*2d 686, 701 (1964), Justice Brennan

spoke of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." There can be no more certain way to chill public debate than by holding over political speakers the threat of having to answer publicly to a grand jury for extravagant or intemperate charges against an incumbent officeholder.

In reply to the claim that disclosure serves the public interest by informing the electorate as to whether or not the charges are well-grounded, it suffices to say that the public interest is adequately served when the matter is presented to the grand jury for its consideration and deliberate action—but action only within the sphere of its authority. For centuries the grand jury's function "has been to indict or to present and its work is limited to indictments and presentments." *In re Camden County Grand Jury, supra,* 10 *N.J.* at 34. It has never functioned as an agency for the gathering and distribution of information.

A candidate for office who has been struck a foul blow and who believes that the truth of the matter lies beyond the ordinary voter's perceptions may, perhaps, obtain the factual data he requires in private litigation. Here, however, we hold to our firmly rooted tradition that ascertaining what is true from what is false in campaign rhetoric is better left to the electorate without the intercession of prosecutors or grand juries. Law enforcement agencies may not be left to observe the tenuous line between purifying the political process and politicizing the grand jury system. The record before us reflects improper use of grand jury powers, and we conclude that the disclosure order under review constitutes a mistaken exercise of discretion.

Reversed.