THE STATE OF NEW JERSEY, DEFENDANT IN ERROR,
v. HARRY C. MOHR, PLAINTIFF IN ERROR.

Argued July 9, 1923—Decided November 19, 1923.

1. The primary purpose of section 82 of the Criminal Procedure act, which provides for the drawing of a special panel of forty-eight jurors, or such larger number as the court in which the indictment is pending shall, by special order, direct, is to protect the interests of the defendant and the state by providing a panel sufficient in number to afford each party the right of challenge to its fullest extent; the court may make as many orders, from time to time, for the accomplishment of that purpose, as arising conditions may require.

2. The trial of the question of the incompetency of a witness by reason of insanity must be by the court, by putting interrogatories to the alleged lunatic in order to discover not only the fact, but also the degree of intellectual deficiency, if it exists, and to admit or reject the witness according as it is found that he is or is not so mentally impaired as to render his statements, if examined as a witness, valueless.

3. Whether the state, after the defense has rested, shall be permitted to recall a witness to testify to a matter concerning which he properly should have been examined in the state's opening case, rests in the sound discretion of the trial court; and the admission of such testimony is not an abuse of that discretion when the trial court gives the defendant the fullest opportunity to introduce contradicting testimony, if he desires so to do.

4. A typewritten paper, which the defendant admits was signed by him, and which admittedly contained a part of a statement made by him, is competent evidence to contradict the testimony of the defendant on the witness-stand.

5. A witness is not bound to answer a question where the answer will criminate or disgrace him; but the privilege of refusing to answer is a personal one, the exercise of which is to be decided by himself, and he is not entitled to be attended by his personal counsel to receive advice as to whether or not he shall answer a given question.

6. Where the court specifically instructs the jury that the function of determining what the facts in the case are rests with them, a misstatement by the court of the sum of money paid by the defendant to an accomplice for the latter's participation in a murder is not harmful error.

On error to the Burlington Oyer and Terminer.

For the plaintiff in error, *Walter S. Keown.*

For the state, *Jonathan H. Kelsey* and *James Mercer Davis.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error, one Doris Brunen and one Charles Powell, were jointly indicted for the murder of John Brunen, who was shot and killed on the 10th of March, 1923. The shooting was done by Powell, at the instigation of Mohr, as the state claimed, who paid Powell a money consideration as an inducement to commit the crime. When the case was called for trial the prosecutor of the pleas moved a severance as to the defendant Powell, and, this motion being granted, the trial proceeded against Mohr and Doris Brunen. The result was the conviction of Mohr of murder in the first degree and the acquittal of Doris Brunen. The present writ of error is sued out by Mohr to review the conviction had against him.

The first ground of reversal urged before us is that the trial court improperly overruled a challenge to the array of jurors. The proofs showed that some time prior to the trial the sheriff drew a special panel of sixty jurors, pursuant to an order of the Court of Oyer and Terminer, and that a list of these jurors was properly served upon the defendants. About a week later the court made a supplemental order, directing the sheriff to draw an additional panel of one hundred and twenty jurors, and a list of this second panel was also duly served upon the defendants. The point of the contention seems to be that the making of this second order was beyond the jurisdiction of the court, in that it was a violation of section 82 of the Criminal Procedure act, which provides that "in cases where the defendant is entitled to twenty peremptory challanges" (as was the fact in the present case) "and to have a list of the jurors delivered to him, it shall be the duty of the sheriff to draw a list of forty-eight jurors, or such larger number as the court in which such indictment shall be pending, shall by special order direct." The argument in support of the contention is that, by virtue of this

statutory enactment, when the court has made an order directing the sheriff to draw a list of more than forty-eight jurors its power is exhausted; and that the original panel cannot thereafter be added to, even if it be discovered subsequently that a larger number than that provided by the order is necessary for the protection of the rights of the defendant and of the state. We see nothing in the words of the statute to justify this contention. Its primary purpose is to protect the interests both of the defendant and of the state by providing a panel of jurors sufficient in number to afford each party the opportunity of exercising the right of challenge to its fullest extent, without being compelled to resort to talesmen by reason of the exhausting of the panel; and it should be so construed as to effectuate that purpose. This being the purpose of the enactment, we have no doubt that, when it is discovered that the number of jurors provided for by the original order is insufficient for the purpose for which they were drawn, the court has power under the act to make a subsequent order directing the adding to the number of jurors on the panel as many more as the situation of the case may justify.

The next assignment of error is that the court improperly permitted Charles Powell, one of the defendants named in the indictment, to be examined as a witness for the state, notwithstanding a challenge interposed on behalf of the plaintiff in error Mohr, based upon the assertion that he was incompetent because of unsound mind; and, further, that the court refused to permit Mohr to call witnesses to prove that allegation. We observe from an examination of the case that the fact is not correctly stated in the assignment of error; that is, the offer was not made to prove Powell's insanity at the time he was called to the witness-stand, but during his prior confinement in the county jail, and the challenge was apparently based upon the unsound theory that the alleged insanity existing at that time necessarily continued until the calling of Powell as a witness. But, assuming that the challenge was as broad as the assignment of error suggests, we think it was properly dealt with by the

trial court. When it was interposed, the court proceeded to interrogate the offered witness for the purpose of ascertaining to what extent, if at all, he was mentally unbalanced, and, as a result of that examination, determined that he was competent to testify as a witness and refused to permit counsel for Mohr to introduce witnesses for the purpose of testifying on the question of the sanity of Powell. Although there is some contrariety of view upon the subject, we think the true rule was stated by Chief Justice Kirkpatrick, speaking for the Supreme Court, as early as the year 1819, in the case of *Den v. Van Cleve*, 5 *N. J. L.* 589. He states that the trial of the question of the incompetency of a witness by reason of insanity must always be by the judges, and by inspection only; and that this inspection consists in putting interrogatories to the alleged lunatic in order to discover not only the fact but also the degree of intellectual deficiency, if it exists, and admit or reject the witness, according as it is found that he is or is not so mentally impaired as to render his statements, if examined as a witness, valueless. *Id.* *653. The doctrine of this case was applied by the Supreme Court of the United States in *District of Columbia v. Armes*, 107 *U. S.* 519, the court saying: "The general rule is that a lunatic, or a person affected with insanity, is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath and be capable of giving a correct account of the matters which he has seen or heard in reference to the issue; and whether he has that understanding is a question to be determined by the court upon the examination of the party himself." We consider, therefore, that the ground of reversal which we have been discussing is without merit.

It is next contended that the court erred in permitting the state, after the defense had rested, to recall one of the state's witnesses to testify to a matter concerning which he properly should have been examined on the state's opening case. The purpose sought to be accomplished in recalling this witness was to prove that a Ford coupe, driven at high speed, had been seen to leave the vicinity of the murder shortly

after its occurrence; and then to identify this coupe as one owned and usually operated by Mohr. The identification was by proof of the license number upon the coupe, followed by further proof by another witness that this license number was the one that had been assigned to Mohr by the state authorities. This testimony was admitted by the court after some hesitation, the explanation of the failure on the part of the state to submit it in its opening case not being entirely satisfactory. Nevertheless, we do not consider that the ruling of the court in admitting the testimony affords any ground for reversal. Whether it should have been admitted or excluded was a matter resting in the sound discretion of the court, and we cannot say that there was any abuse in the exercise of that discretion. Nor can we say that the admission of the testimony after the plaintiff in error had rested his case was harmful to him; for he was afforded, by express direction of the trial court at the time of its admission, the fullest opportunity to introduce evidence controverting this testimony, if he desired to do so. We conclude, therefore, that the conviction cannot be reversed upon the ground of the admission of this testimony.

The next ground of reversal is directed at the admission of a typewritten paper, which the state claimed was the production of plaintiff in error. At the foot of the paper appeared the name of "John Potter," with his address, and the plaintiff in error not only admitted on his cross-examination as a witness that this name and the address were in his own handwriting, but further admitted that the paper itself contained a part of a statement made by him. The contents of the paper were, to some extent, contradictory of his testimony while on the witness-stand. The paper was material and relevant, therefore, and there was no suggestion on the part of counsel, when the objection to its admission was interposed, that his client was not, in fact, the author of it. In this situation it is difficult to understand upon what theory this paper should have been excluded, and the brief of counsel is not illuminating upon that point. We have no doubt that, upon the facts which we have recited, the trial court was

justified in assuming that the paper had been typewritten either by the plaintiff in error or under his direction, and that, consequently, it was properly receivable in evidence against him.

. It is further contended that the judgment under review should be reversed because of the fact that during the trial of the cause the court permitted James Mercer Davis, a counselor-at-law, to interpose objections to questions asked on the cross-examination of the state's witness Powell by counsel of the plaintiff in error, and to advise the witness whether or not to answer such questions, and also to make suggestions to the prosecutor of the pleas as to the course to be pursued by that officer during that cross-examination. Although Mr. Davis has appeared before us on the return of the present writ of error as associate counsel for the state, his appearance in the trial court was not in any such capacity, but solely as counsel for the witness Powell. That being the legal status of Mr. Davis at the trial, the legal impropriety of his action in advising his client while on the witness-stand as to whether or not he should answer questions put to him on cross-examination cannot be doubted. As was stated by the present Chancellor in the case of *Vineland* v. *Maretti*, 93 *N. J. Eq.* 513, 521, a witness is not bound to answer a question where the answer thereto will criminate or disgrace him. The protection against self-incrimination, however, is the privilege of the witness, and he may waive that privilege, and his action in that regard is a matter personal to himself, and neither the court nor the parties or their counsel can properly object to the witness answering questions upon the ground of self-incrimination. A question may lawfully be put, whatever its tendency to draw out self-incriminating testimony may be, and the witness must decide for himself whether he will assert his privilege or waive it and answer. That this is a correct statement of the rule with relation to this subject is entirely settled; and it goes without saying, as a corollary to this rule, that the witness has no right to be attended by his personal counsel (who has no place in the trial of the cause) and receive from him advice as to

whether or not he shall answer a given question. But, although this is the settled law, there is nothing in the case to show that the plaintiff in error suffered any injury by the conduct of Mr. Davis with relation to the matters which are made the ground of this reason for reversal; for, although he assumed to act as the adviser of the witness, the record shows that in every case in which he tendered his advice the witness refused to be guided by it, and either answered or refused to answer the questions put to him by counsel for the plaintiff in error directly contrary to the advice given to him by Mr. Davis. As to the fact that Mr. Davis advised the prosecutor with relation to the conduct of the case during the cross-examination of the witness we see nothing legally objectionable in it, for the prosecutor may listen to the advice of outside counsel during the conduct of a case, and either act upon or disregard that advice, as he sees fit, notwithstanding the objection, if any is made, on the part of the defendant during the trial. *Gardner* v. *State,* 55 *N. J. L.* 17.

It is further contended, as a ground for reversing this judgment, that the court erred in its charge to the jury in its mention of the amount of money which the state had proved was paid by the plaintiff in error to Powell as a consideration for the latter's participation in the murder, the amount mentioned by the court being $400, while the proof showed a payment of $500 or $600. But this misstatement of fact could not have been harmful, even if the instruction had been conclusive on that fact so far as the determination of the jury was concerned. It was not, however, conclusive, for the court specifically instructed the jury more than once in the charge that the function of determining what the facts in the case were rested with them, and not with the court. We find no merit, therefore, in this ground of reversal.

The only other ground of reversal is based upon the assertion that the verdict of the jury was contrary to the weight of the testimony. Our examination of the proofs sent up with the writ of error satisfies us that this contention is not

well founded. On the contrary, we consider that the verdict of the jury was supported by the great weight of the testimony.

The judgment under review will be affirmed.

*For reversal*—White, J. 1.