241 N.J. Super. 18 (1989)
574 A.2d 449
IN THE MATTER OF GRAND JURY SUBPOENAS DUCES TECUM SERVED BY THE SUSSEX COUNTY GRAND JURY ON ZULIMA V. FARBER, ESQ. AND STEPHEN H. SKOLLER, ESQ.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1989.
Decided November 15, 1989.
*21 Before Judges KING, SHEBELL and BAIME.
Thomas E. Bracken, Assistant Prosecutor, argued the cause for appellant (Richard E. Honig, Sussex County Prosecutor, attorney; Thomas E. Bracken, of counsel, and on the brief).
Robert L. Krakower, argued the cause for respondents (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Robert L. Krakower of counsel, and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
We granted the State's motion for leave to appeal from an order of the Superior Court, Law Division, quashing two subpoenas ad testificandum served upon Zulima V. Farber and Stephen H. Skoller, members of the law firm of Lowenstein, Sandler, Kohl, Fisher & Boylan (Lowenstein). The subpoenas, as amplified in a letter sent by the Sussex County Prosecutor, direct the attorneys to appear before the Sussex County Grand Jury and testify with respect to their activities in connection with their representation of the Sussex County Board of Freeholders. A separate subpoena duces tecum was served upon Ms. Farber ordering her to produce various related documents. It later developed, however, that the documents described in the subpoena did not exist. The Law Division's order thus pertains solely to the subpoenas ad testificandum.

I.
The salient facts are not in dispute. For approximately one year, the Sussex County Grand Jury has been investigating allegations focusing upon the operation of the Sussex County Adjuster's Office. The investigation was apparently triggered by news reports containing allegations that the Adjuster had failed to execute her duty to review periodically the financial status of institutionalized Sussex County residents and legally responsible relatives. The purpose of these periodic reviews is *22 to determine whether and to what extent such patients or those legally responsible for their welfare are obliged to pay for the medical and psychiatric services rendered. Also the subject of the grand jury's inquiry are allegations that confidential medical records had been released improperly in the course of a political campaign. The grand jury has reviewed hundreds of documents and has heard numerous witnesses. Apparently two members of the Sussex County Board of Freeholders and the Adjuster have been advised that they are targets of the investigation and have been given the appropriate warnings. See State v. Vinegra, 73 N.J. 484, 488-489, 376 A.2d 150 (1977). The grand jury's term has been extended several times.
On January 24, 1989, the Lowenstein firm was retained by the Board of Freeholders to serve as special counsel.[1] Under the Board's resolution, the firm is to render "professional legal services in connection with the review of the present policies and procedures of the Adjuster's Office...." According to the resolution, the articulated objective of the Board and hence the principal mission of the firm under its retainer is to "bring [the practices] of the ... Adjuster's Office into compliance with ... current laws and regulations...." In the course of performing its services, the Lowenstein firm interviewed numerous County employees, examined a plethora of documents, engaged in extensive legal research and prepared several preliminary reports. Although the circumstances surrounding its disclosure are not fully revealed in the record, one of the preliminary reports was publicly released by a freeholder. Our examination of that report discloses that it contains a thorough review of State statutes and regulations and makes various recommendations *23 to correct the deficiencies found to exist in the Adjuster's Office.
On May 23 and 24, 1989, Ms. Farber and Mr. Skoller were served with subpoenas commanding that they appear and give testimony before the grand jury. Although the subpoenas were silent with respect to the nature of the subject matter to be explored, a letter subsequently sent to the attorneys by the Sussex County Prosecutor's Office revealed the parameters of the proposed inquiry. According to the letter, "among the areas to be covered shall be the charter for [the attorneys'] activities ..., what it has done and [what it] plans to do with respect to the reorganization of the ... Adjuster's Office...." The letter also contains an oblique reference to the firm's "billings" for the legal services rendered. One of the subpoenas also included a demand for the production of documents, including correspondence between the attorneys, the Board and the Adjuster. In its brief submitted to us in this appeal, the State concedes that the attorneys "were subpoenaed ... to explain their activities with respect to their engagement by the County." Essentially the same representation was made in proceedings in the Law Division.
In any event, the Lowenstein firm filed a timely motion to quash the subpoenas on the basis that the attorneys' appearance before the grand jury would intrude upon the attorney-client privilege. It also argued that much, if not all, of the attorneys' proposed testimony, as outlined in the prosecutor's letter, was protected as "work product."
The questions raised were argued extensively in the Law Division. In addition, the prosecutor submitted an affidavit which was, and remains, sealed, describing in great detail much of what had transpired before the grand jury.[2] The Law *24 Division rendered a lengthy and thoughtful oral opinion in which it found that the subpoenas significantly encroached upon the attorney-client relationship, and the attorneys had thus properly invoked the evidentiary privilege. More specifically, the court determined that the attorney-client privilege was applicable notwithstanding the fact that the Board was a public entity, that the public official immunity statute (N.J.S.A. 2A:81-17.2a) provided no statutory compulsion for the attorneys to testify, and that the premature release of the "preliminary report" did not constitute a waiver of the Board's rights. While acknowledging the general rule that requires a witness to appear and assert the privilege in response to a particular question, the Law Division concluded that adherence to this practice in this case would have a serious "chilling effect" on the attorney-client relationship. An order quashing the subpoenas was entered accordingly.
The State contends on appeal that the attorney-client privilege is not applicable to governmental entities. Noting that it is the duty of every public employee to appear and testify upon matters directly related to the conduct of his office, see N.J.S.A. 2A:81-17.2a1, the State argues that Ms. Farber and Mr. Skoller, having been retained as "special" county counsel, are obliged to honor the grand jury's subpoenas. Alternatively, the State asserts that the Lowenstein firm did not serve in the *25 capacity of a lawyer in providing services to the Board, but instead acted as "management consultants." The State thus claims that communications between the Board and members of the Lowenstein firm did not fall within the purview of the privilege. The State also contends that the privilege was waived by reason of the release of the "preliminary report," and because public policy considerations compel full disclosure. Finally, the State contends that the attorneys were obliged to appear before the grand jury and assert the privilege to specific questions propounded. It is argued that the Law Division's decision was, therefore, premature.

II.
Certain prefatory comments are in order. This appeal involves a collision between the grand jury's "wide latitude to inquire into violations of [the] criminal law," United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568 (1974), and the "sanctity of confidentiality" generally accorded to the attorney-client relationship, Reardon v. Marlayne, Inc., 83 N.J. 460, 470, 416 A.2d 852 (1980). It has been said that "the public ... has a right to every [person's] evidence," and, thus, "the grand jury's authority to subpoena witnesses is not only historic, but essential to its task." Branzburg v. Hayes, 408 U.S. 665, 689, 92 S.Ct. 2646, 2660-61, 33 L.Ed.2d 626, 643-644 (1972). However, the attorney-client privilege "advances secrecy," United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 560, 483 A.2d 821 (App.Div. 1984), thereby fostering and encouraging "full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 684, 66 L.Ed.2d 584, 591 (1981). The underlying theories are patently antithetical. To that extent, resolution of the issues presented here requires a reconciliation of competing values.
We begin our analysis with the well-settled principle that "a grand jury is not an officious meddler." In re Addonizio, 53 *26 N.J. 107, 124, 248 A.2d 531 (1968). Rather, "[i]t is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result ... or by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979, 983 (1919). The scope of the grand jury's powers reflects its special role in insuring fair and effective law enforcement. A grand jury proceeding "is not an adversary hearing in which the guilt or innocence of the accused is adjudicated." United States v. Calandra, supra, 414 U.S. at 343, 94 S.Ct. at 617, 38 L.Ed.2d at 569. Rather, "it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be conducted against any person." Ibid. "When the grand jury is performing its investigatory function into a general problem area ... society's interest is best served by a thorough and extensive investigation...." Wood v. Georgia, 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569, 581-582 (1962). "It may explore an anonymous charge." In re Addonizio, supra, 53 N.J. at 126, 248 A.2d 531. So also, it may pursue a "rumor." Ibid. In that context, our Supreme Court has said "[s]ome exploration or fishing necessarily is inherent" in the grand jury's role. Ibid., quoting Schwimmer v. United States, 232 F.2d 855, 862-863 (8th Cir.1956), cert. den. 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). In a similar vein, the United States Supreme Court has emphasized that "an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors," United States v. Calandra, supra, 414 U.S. at 344, 94 S.Ct. at 618, 38 L.Ed.2d at 569, and the grand jury's inquiry "is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." Ibid., quoting United States v. Stone, 429 F.2d 138, 140 (2d Cir.1970).
*27 The importance of the attorney-client relationship and the need to protect confidentiality have similarly long been recognized by both the United States Supreme Court and our highest court. See, e.g., United States v. Nobles, 422 U.S. 225, 237, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141, 153 (1975); Hickman v. Taylor, 329 U.S. 495, 510-511, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947); In re Selser, 15 N.J. 393, 403, 105 A.2d 395 (1954); State v. Toscano, 13 N.J. 418, 424, 100 A.2d 170 (1953). In United States v. Nobles, supra, the United States Supreme Court said "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 422 U.S. at 237, 95 S.Ct. at 2169, 45 L.Ed.2d at 153. "Proper [preparation] of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Ibid. Similarly, in In re Selser, supra, our Supreme Court noted that "[i]n order to promote freedom of consultation of legal advisors by clients, the apprehension of compelled disclosure ... must be removed...." In re Selser, supra, 15 N.J. at 404, 105 A.2d 395, quoting 8 Wigmore, Evidence (3 ed. 1940), at 550.
The attorney-client privilege is thus "deeply embedded in our jurisprudence and formed a part of the common law of England prior to the birth of this country." United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 561, 483 A.2d 821, citing Upjohn Co. v. United States, supra, 449 U.S. at 389, 101 S.Ct. at 684, 66 L.Ed.2d at 91. "While the privilege was not originally embodied in either constitutional or statutory provisions," Macey v. Rollins Environmental Services, Inc., 179 N.J. Super. 535, 538, 432 A.2d 960 (App.Div. 1981), our Legislature ultimately codified it in N.J.S.A. 2A:84A-20. It presently appears in our Rules of Evidence. See Evid.R. 26. As we have pointed out, the privilege recognizes that sound legal advice or advocacy serves public ends and that the confidentiality of *28 communications between client and attorney constitutes an indispensable ingredient of our legal system.

III.
Against this backdrop, we have no hesitancy in holding that the privilege is fully applicable to communications between a public body and an attorney retained to represent it. While our research discloses no reported New Jersey decision dealing with the precise issue, we note that in In re State Com'n of Investigation, 226 N.J. Super. 461, 544 A.2d 893 (App.Div. 1988), the New Jersey School Boards Association (NJSBA), a body corporate and politic created by N.J.S.A. 18A:6-45, was permitted to invoke the attorney-client privilege in successfully quashing a subpoena duces tecum issued by the State Commission of Investigation (SCI) directing it to produce a report prepared by a law firm retained by it as "special counsel." There, as here, a private law firm was retained by a public entity to render legal advice, make recommendations and take corrective action to cure alleged improprieties in another public entity's practices and procedures. Although the issue was not raised by the parties in In re State Com'n of Investigation, supra, it is nevertheless instructive that we found the "report [prepared by special counsel] was a privileged attorney-client communication". Id. 226 N.J. Super. at 464, 544 A.2d 893.
We note that other jurisdictions have dealt with the precise issue presented here and have uniformly found the privilege to be applicable to communications between a public entity and its attorney. See, e.g., Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 863 (D.C. Cir.1980); Green v. I.R.S., 556 F. Supp. 79, 85 (N.D.Ind. 1982), aff'd 734 F.2d 18 (7th Cir.); People v. Glen Arms Estate, Inc., 230 Cal. App.2d 841, 41 Cal. Rptr. 303, 310 (App.Ct. 1964); see also United States v. American Tel. & Tel. Co., 86 F.R.D. 603, 621 (D.D.C. 1979); Detroit Screwmatic Co. v. United States, 49 F.R.D. 77 (S.D.N.Y. 1970); United States v. Anderson, 34 F.R.D. 518 (D.Colo. 1963). In these decisions and others, the courts have generally *29 found a functional similarity between public and private bureaucratic organizations. See, e.g., S.E.C. v. World-Wide Coin Invs., Ltd., 92 F.R.D. 65, 67 (N.D.Ga. 1981); Jupiter Painting Contracting Co. v. United States, 87 F.R.D. 593, 598 n. 6 (E.D.Pa. 1980); Hearn v. Rhay, 68 F.R.D. 574, 579 (E.D.Wash. 1975). These decisions rest on the need of the governmental client for assurance of confidentiality equivalent to a corporation's need for confidential advice. Although scholarly opinion is divided with respect to the viability of this thesis, compare Note, "Attorney-Client Privilege for the Government Entity," 97 Yale L.J. 1725 (1988), with Note, "The Applicability and Scope of the Attorney-Client Privilege in the Executive Branch of the Federal Government." 62 B.U.L.Rev. 1003 (1982), we are convinced that many of the considerations which underlie application of the attorney-client privilege to corporations, see Upjohn Co. v. United States, supra, militate strongly in favor of its extension to public entities.
Our conclusion in this respect is buttressed by the Open Public Meetings Act (N.J.S.A. 10:4-7). More specifically, N.J.S.A. 10:4-12b(7) states that "[a] public body may exclude the public from that portion of a meeting involving ... [a]ny matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer." Thus, our Legislature has expressly recognized that public scrutiny of matters traditionally falling within the purview of the attorney-client privilege is often inimical to the public interest, notwithstanding that a governmental entity is the client. See Pillsbury v. Freeholders Cty. of Monmouth, 133 N.J. Super. 526, 535, 337 A.2d 632 (Law Div. 1975), aff'd 140 N.J. Super. 410, 356 A.2d 424 (App.Div. 1976); see also Biunno, New Jersey Rules of Evidence, Comment 2 to Evid.R. 26 (1989).

IV.
We are entirely unpersuaded by the State's argument that Ms. Farber and Mr. Skoller are obliged to testify by reason *30 of N.J.S.A. 2A:81-17.2a1. That statute provides that a public employee must "appear and testify upon matters directly related to the conduct of his office, position or employment before any ... grand jury." Should the employee refuse to testify, the statute mandates his removal from office. N.J.S.A. 2A:81-17.2a1. In return for his statutorily compelled testimony, the employee is granted "use plus fruits immunity." N.J.S.A. 2A:81-17.2a2; N.J.S.A. 2A:81-17.2a4. For the purpose of the act, the term "public employee" means "any person who occupies any office, position or employment in" the State, county or municipal government. N.J.S.A. 2A:81-17.2a. We conclude that Ms. Farber and Mr. Skoller are not "public employee[s]" under this definition.

V.
We also reject the State's claim that the Lowenstein firm acted as a management-consultant and not as a lawyer in providing services to the Board. Of course, we recognize that the privilege is "limited to communications made to the attorney in his professional capacity." United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 562, 483 A.2d 821, quoting Metalsalts Corp. v. Weiss, 76 N.J. Super. 291, 297, 184 A.2d 435 (Ch.Div. 1962); see also L.J. v. J.B., 150 N.J. Super. 373, 378, 375 A.2d 1202 (App.Div. 1977); Hansen v. Janitschek, 57 N.J. Super. 418, 433, 154 A.2d 855 (App.Div. 1959), rev'd on dissenting opinion, 31 N.J. 545, 158 A.2d 329 (1960); Palatini v. Sarian, 15 N.J. Super. 34, 42, 83 A.2d 24 (App.Div. 1951). Stated somewhat differently, the privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client. United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 562, 483 A.2d 821. This much conceded, the record here plainly belies the State's contention that something other than "legal services" were rendered to the Board by the Lowenstein firm. The Board's resolution and Lowenstein's "preliminary report" plainly disclose that the firm was retained to provide "legal services" *31 and that Ms. Farber and Mr. Skoller served their client in the context of their professional capacity.

VI.
We next turn to the issue of waiver. As we noted in our recital of the facts, a freeholder apparently released one of the preliminary reports prepared by the Lowenstein firm. We do not find this to be a complete waiver of all otherwise confidential communications between the Board and its attorney. Initially, we note that the circumstances surrounding the apparently premature release of the report are somewhat unclear. It appears, however, that the Board never authorized the distribution of the preliminary findings of the Lowenstein firm.[3] If so, the unauthorized disclosure of the report would not constitute a waiver. See Biunno, New Jersey Rules of Evidence, Comment to Evid.R. 37; see also Matter of Nackson, 221 N.J. Super. 187, 191, 534 A.2d 65 (App.Div. 1987), aff'd 114 N.J. 527, 555 A.2d 1101 (1989).
But even if the distribution of the report was authorized, we would not deem that limited disclosure to be an absolute and complete waiver. We acknowledge that "a disclosure of a part of a protected communication results in a total waiver of the attorney-client privilege." Sicpa No. America v. Donaldson Enterprises, Inc., 179 N.J. Super. 56, 61, 430 A.2d 262 (Law Div. 1981); see also Evid.R. 37. In that respect, Evid.R. 37 states that "[a] person waives his right or privilege to ... prevent another from disclosing a specified matter if he ... made disclosure of any part of the privileged matter...." Here, however, the preliminary report did not expressly disclose communications made to Lowenstein by the Board. Rather, it set forth the statutory and regulatory framework within which *32 the Adjuster's Office must operate and provided preliminary recommendations designed to cure deficient past practices and procedures. We do not perceive this to be a disclosure of an otherwise confidential communication which would result in a complete and absolute waiver of the attorney-client privilege.
Nor do we perceive any sound basis for otherwise "piercing" the privilege based on public policy considerations. See United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 563, 483 A.2d 821. The "necessary foundations to the valid piercing of [the] privilege" were described by our Supreme Court in In re Koslov, 79 N.J. 232, 398 A.2d 882 (1979). There, the Court adopted a tripartite test in determining whether the privilege must yield to other important societal concerns. First, "[t]here must be a legitimate need ... to reach the evidence sought to be shielded." Id. 79 N.J. at 243, 398 A.2d 882. Second, "[t]here must be a showing of relevance and materiality of that evidence to the issue before the court." Id. at 243-244, 398 A.2d 882. Lastly, the party seeking to bar assertion of the privilege must show "by a fair preponderance of the evidence including all reasonable inferences, that the ... information [cannot] be secured from any less intrusive source." Id. at 244, 398 A.2d 882; see also Matter of Nackson, supra, 114 N.J. at 537, 555 A.2d 1101; Fellerman v. Bradley, 99 N.J. 493, 501-502, 493 A.2d 1239 (1985). Suffice it to say, the State has utterly failed to satisfy this burden. On the record before us, it cannot fairly be said that the grand jury has exhausted other means to obtain the information it seeks.

VII.
Although phrased in a variety of ways, the State's final contention is that the Law Division erred by permitting the attorneys to assert the privilege on an incomplete record. More specifically, the State asserts that Ms. Farber and Mr. Skoller should have been required to appear before the grand jury and assert the privilege in response to specific questions propounded. *33 Stripped to its essentials, the State's contention is predicated upon the thesis that the Law Division acted prematurely in adjudicating whether or not the privilege was applicable.
In the context of the Fifth Amendment privilege, it is the general rule that a non-target witness must appear before the grand jury and can invoke his right not to answer only in response to a specific question propounded. See, e.g., In re Addonizio, supra, 53 N.J. at 116-117, 248 A.2d 531; In re Boiardo, 34 N.J. 599, 604-606, 170 A.2d 816 (1961); State v. DeCola, 33 N.J. 335, 341-342, 164 A.2d 729 (1960). A witness "may not claim the privilege until the question is put ... and if he answers without claiming the privilege he irrevocably waives it." State v. Fary, 19 N.J. 431, 435, 117 A.2d 499 (1955); State v. Toscano, 13 N.J. 418, 423, 100 A.2d 170 (1953). "[A] witness may not make himself the final judge of the availability of the Fifth Amendment privilege and hence must appear to permit the court to pass upon it." In re Addonizio, supra, 53 N.J. at 116, 248 A.2d 531.
There are obvious differences between the Fifth Amendment privilege against self-incrimination and the attorney-client privilege. "[T]he privilege against self-incrimination is personal to the individual claimant, and the election to invoke it must be exercised by the witness himself, on the stand and under oath, after hearing a question or questions addressed to him. It is not invocable by an attorney as his surrogate." State v. Jennings, 126 N.J. Super. 70, 75, 312 A.2d 864 (App. Div. 1972), certif. den. 60 N.J. 512, 291 A.2d 374 (1972); see also State v. Williams, 59 N.J. 493, 502, 284 A.2d 172 (1971); State v. Mohr, 99 N.J.L. 124, 129-130, 122 A. 837 (E. & A. 1923). An attorney cannot claim the privilege for his client, because, among other reasons, "one can never tell when a witness may decide to answer questions, even one who has indicated a contrary intent to his counsel or the court, and the court should always keep the door open for a decision by the witness to testify rather than discourage it." State v. Jamison, 64 N.J. *34 363, 378, 379, 316 A.2d 439 (1974). In a similar vein, the protection of the attorney-client privilege is not for the benefit of the attorney, but rather for the client. See Fellerman v. Bradley, supra, 99 N.J. at 498, 493 A.2d 1239; In re Selser, supra, 15 N.J. at 404, 105 A.2d 395. However "[n]ot only may the client alone waive the privilege, but the attorney, if called upon to divulge confidential communications, must assert it." State v. Schubert, 235 N.J. Super. 212, 561 A.2d 1186 (App.Div. 1989).
Despite these differences, we agree with the State that, as a general rule, in contrast to a subpoena duces tecum, see R. 1:9-2, a blanket motion to quash a subpoena ad testificandum is extremely inadvisable. Instead, the attorney should be called upon to appear and assert the attorney-client privilege after hearing the question or questions addressed to him. Even then, the attorney should not be the final arbiter as to whether the privilege has been properly invoked. Instead, the matter should be brought to the attention of the court for final determination. The burden is upon the witness to justify the invocation of the privilege as to each question propounded.
Lowenstein concedes that this is generally the preferable course. However, it contends that a special rule should be adopted in instances where an attorney is called to testify before a grand jury investigating his client. It is argued that a subpoena which requires a lawyer to provide evidence to a grand jury about his representation of a client who is the subject of the investigation is inherently intrusive and intimidating.
This argument has much to commend it. There are grave dangers attendant to the practice of calling a lawyer before a grand jury which is investigating his client. The disadvantages of the practice have been demonstrated in such cases as In re Terkeltoub, 256 F. Supp. 683 (S.D.N.Y. 1966), and In re Stolar, 397 F. Supp. 520 (S.D.N.Y. 1975). "The practice permits the government by unilateral action to create the possibility of a *35 conflict of interest between attorney and client, which may lead to a suspect being denied his choice of counsel by disqualification." In re Grand Jury Investigation, 412 F. Supp. 943, 945-946 (E.D.Pa. 1976). Moreover, as noted by the Law Division, the very presence of the attorney in the grand jury room, even if only to assert valid privileges, can raise doubts in the client's mind as to his lawyer's unfettered devotion to the client's interests and thus impair or at least impinge upon the attorney-client relationship. Ibid.
A growing body of judicial and scholarly opinion has recognized the dangerous policy implications of subpoenaing attorneys to obtain evidence about their clients. United States v. Klubock, 832 F.2d 649 (1st Cir.1987) (en banc); In re Grand Jury Subpoena To Attorney, 679 F. Supp. 1403 (N.D.W. Va. 1988); American Bar Association, Report with Recommendations to the House of Delegates, Rpt. No. 111D (Feb. 1986). Some have proposed special rules designed to alleviate the tension between the competing rights of a grand jury to investigate and the client to protect the confidentiality of his communications to counsel. See, e.g., United States v. Klubock, supra. In Matter of Nackson, supra, counsel requested that our Supreme Court "adopt a rule of practice in the exercise of [its] supervisory power over grand juries, N.J.S.A. 2A:73A-3, to require prior court approval before an attorney is summoned before a grand jury." Id. 221 N.J. Super. at 539, 534 A.2d 65. The Court responded by noting, "[w]e have no sense from this record that this is anything but an isolated instance of client circumstances unlikely to recur." Id. at 539-540, 534 A.2d 65. The Court thus saw "no current need for rulemaking." Id. at 540, 534 A.2d 65.
We thus agree with the State that the Law Division should have required the attorneys to appear before the grand jury and assert the privilege to a specific question or questions put to them. Having said this, we point out that the Law Division had the benefit of the prosecutor's extensive and detailed affidavit. As we mentioned previously, the affidavit describes *36 what has transpired before the grand jury and, therefore, cannot be disclosed. The affidavit also describes with particularity the areas in which the grand jury wishes to question the attorneys. It is obvious that most of these areas fall within the purview of the attorney-client privilege.
There are exceptions, however. Specifically, the grand jury wishes to question the Lowenstein firm with respect to its billing practices in this case. The grand jury seeks to learn whether the bills submitted to the County for payment reflect services which were never rendered. In a similar vein, the grand jury wishes to inquire whether the County has been inadvertently or mistakenly billed for services rendered to another client of the Lowenstein firm. These are proper areas of inquiry. They are not protected by the attorney-client privilege. In our view, the grand jury clearly has the right to determine whether the County has been billed properly for legal services actually rendered to the Board.[4] We hasten to add that the factual predicate for this inquiry is somewhat unclear. We do not suggest any impropriety or wrongdoing.

VIII.
Accordingly, the order of the Law Division quashing the subpoenas ad testificandum is reversed and the matter is remanded for proceedings consistent with this opinion.
NOTES
[1] The exact parameters of the Lowenstein firm's engagement are not altogether clear. Under the Board's resolution, Lowenstein is to serve as the Board's private attorney and is to investigate the practices and procedures of the Adjuster's Office. It also appears that the firm is to represent the Adjuster's Office.
[2] Lowenstein's motion to unseal the prosecutor's affidavit is denied. The considerations enunciated in Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323, 1326 (1959) and United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, 1081 (1958) clearly impel this result. Cf. State v. Doliner, 96 N.J. 236, 241, 475 A.2d 552 (1984); State v. Arace Bros., 230 N.J. Super. 22, 36 n. 4, 552 A.2d 628 (App.Div. 1989); River Edge Savings & Loan Ass'n. v. Hyland, 165 N.J. Super. 540, 544-545, 398 A.2d 912 (App.Div. 1979), certif. den. 81 N.J. 58, 404 A.2d 1157 (1979); Doe v. Klein, 143 N.J. Super. 134, 141, 362 A.2d 1204 (App.Div. 1976). We recognize that, at least to some extent, Lowenstein's ability to argue the merits of the issues raised is hampered by the fact that the prosecutor's affidavit is shrouded in secrecy. However, we are concerned here with an ongoing grand jury investigation and, thus, to unseal the prosecutor's affidavit would substantially damage the grand jury's inquiry. In any event, most of the questions presented are "legal" in nature and do not depend upon the information set forth in the sealed affidavit.
[3] We have not been provided with a resolution authorizing the release of the report to the public. We point out that the preliminary report was marked "privileged" and "confidential." The record points strongly to the conclusion that release of the report was wholly unauthorized by the Board.
[4] We need not, and do not, decide whether another separate grand jury should be convened to inquire into this issue. We add that the Assignment Judge possesses broad supervisory authority over the conduct of a grand jury. See State v. Murphy, 110 N.J. 20, 30-33, 538 A.2d 1235 (1988).