**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2754-24

ANDRES FLORES-ARTIEDA
and NICOLE CORDOVA,

    Plaintiffs-Respondents,

v.

CHUBB INSURANCE COMPANY
OF NEW JERSEY,

    Defendant-Appellant,

and

CHUBB NATIONAL INSURANCE
COMPANY,

    Defendant.

_____

Argued September 9, 2025 – Decided September 22, 2025

Before Judges Gilson, Perez Friscia and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1428-22.

Paul Ferland argued the cause for appellant (Cozen O'Connor, PC, attorneys; Paul Ferland and Josh Tumen, on the brief).

Eric Dinnocenzo argued the cause for respondents.

PER CURIAM

In this insurance coverage dispute, on leave granted, defendant Chubb Insurance Company of New Jersey (Chubb) appeals from the March 21, 2025 Law Division orders: denying Chubb's motion to disqualify plaintiff Nicole Cordova's[1] counsel, Eric Dinnocenzo, Esq.; granting plaintiff's motion to quash Chubb's subpoena served on Dinnocenzo; and granting a protective order barring Chubb from seeking Dinnocenzo's disqualification. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

Chubb issued a "Masterpiece" insurance policy to Flores-Artieda, which was effective beginning April 10, 2018. Its policy insured Flores-Artieda's jewelry—a Patek Phillipe watch and other items. On May 1, Chubb added

---

[1] Co-plaintiff Andres Flores-Artieda passed away after he and Cordova had filed the complaint. On August 20, 2024, the court granted Chubb's motion to dismiss Flores-Artieda's claim because no executor had sought substitution in the matter on behalf of the estate. R. 4:34-1(b) (stating that non-parties may move to substitute in as "the successors or representatives of the deceased party"); see also N.J.S.A. 3B:10-25 (stating that an estate administrator "has the same standing to sue . . . as . . . [the] decedent had immediately prior to death").

Cordova as an additional insured, increased the coverage for the Patek Phillipe watch to $215,900, and included fourteen additional items under the policy. On December 1, Flores-Artieda had Chubb add a men's Rolex watch to their policy for the coverage amount of $22,000. On December 8, Chubb also added to their policy a custom-made women's gold necklace for $407,000 of coverage. As of late December 2018, their policy included thirty-one items, and the coverage amount increased to $973,500. Their policy required any lawsuit regarding a covered loss to be filed within "two years" of the loss's occurrence.

Cordova alleges that on December 21, 2018, at about 10:30 p.m., she drove with Flores-Artieda to a restaurant in Plainfield for take-out food. She remained in their vehicle while Flores-Artieda went to pick up their order. As Flores-Artieda returned to the vehicle, an unknown assailant allegedly placed a gun to Flores-Artieda's back and directed him back into the vehicle where they were robbed. They submitted a proof of loss claim to Chubb totaling $772,500 for the value of the allegedly stolen items, including: the Patek Phillipe watch—$105,000; the gold custom necklace—$407,000; a women's ring—$30,000; a women's gold Rolex—$75,000; a gold diamond necklace—

$98,500; a white gold diamond bangle—$31,000; and a yellow gold fancy bangle—$26,000.

On February 6, 2019, Chubb advised Cordova and Flores-Artieda it was investigating the alleged theft "under a full and complete reservation of rights." Chubb's investigator Donald Waltz began verifying the circumstances surrounding the theft claim. Chubb thereafter requested Cordova and Flores-Artieda participate in examinations under oath (EUO) regarding the stolen items and provide documentation. On May 4, Chubb cancelled their policy for non-payment.

On August 27, 2019 and February 12, 2020, Chubb's counsel Cynthia Bernstiel, Esq., conducted Cordova's EUOs. In response to Chubb's discovery requests, Cordova and Flores-Artieda allegedly provided over 2,000 pages of documents. Chubb continued its investigation and "refused to pay the claim or issue a denial letter."

On May 16, 2022, Cordova and Flores-Artieda filed a complaint designating Dinnocenzo as trial counsel. They accused Chubb of wrongly refusing insurance coverage under the policy, sought declaratory judgment and injunctive relief, and alleged claims for: breach of contract; bad faith and violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -

4

228; and a violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to - 50.

They averred Chubb's investigation was conducted in bad faith because: Chubb's document requests were overly-wide in scope and meant "to harass" them; Chubb "took overly[-]extensive, repetitive, and harassing EUOs" of them; Waltz made disparaging remarks to Flores-Artieda's jeweler; Chubb's investigator went to Flores-Artieda's employer's home; Chubb wrongly alleged a lack of cooperation; Chubb "act[ed] unethically and engag[ed] in harassment" by contacting Flores-Artieda's employer's accountant; and Bernstiel improperly questioned Cordova's and Flores-Artieda's tax preparers. Moreover, Cordova alleged that in February 2022, Chubb requested her third EUO, but the parties disagreed as to the EUO's parameters. After Cordova agreed to virtually appear, Chubb insisted the EUO had to be in-person despite her alleged medical disability. The complaint references that Dinnocenzo sent multiple letters to Bernstiel regarding necessary extensions of the lawsuit filing limitations period while Chubb continued its investigation, memorializing that Cordova believed her assistance was necessary to rebut Chubb's lack-of-cooperation defense.

A-2754-24

Thereafter, Chubb moved to dismiss the complaint, which the trial court granted, dismissing the first and second causes of action, on November 18, 2022. On December 23, Chubb filed an answer, which included substantial references to the communications between Bernstiel and Dinnocenzo from December 2019 through April 30, 2022.

In January 2023, the court on its own motion ordered Chubb to conduct another EUO of Cordova by January 13 and make a coverage determination within 30 days thereafter. Chubb's counsel Paul Ferland, Esq. conducted Cordova's EUO. On February 10, Chubb notified Cordova and Flores-Artieda it had finished investigating their claim and was denying coverage because: "[t]he [i]nsureds violated the [p]olicy's '[c]oncealment or fraud' provision by intentionally concealing and misrepresenting material facts relevant to the [c]laim"; "[t]he alleged robbery of [the] [i]nsureds' jewelry and money was a staged loss"; "[t]he insureds violated the [p]olicy's '[y]our duties after a loss' provision by virtue of their failure to provide relevant and material documents requested"; and "[t]he insureds violated the [p]olicy's '[y]our duties after a loss' provision when they failed to provide truthful sworn testimony about the [c]laim during their" EUOs and a "sworn statement in [the] proof of loss." The same day, Chubb filed an amended answer and counterclaim alleging

A-2754-24

violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30.

On February 12, 2025, Chubb moved to disqualify Dinnocenzo as Cordova's counsel, arguing Dinnocenzo was a necessary witness at trial. On February 26, Cordova cross-moved: to quash Chubb's subpoena served on Dinnocenzo; for a protective order preventing Chubb from seeking discovery from Dinnocenzo and Dinnocenzo's disqualification; and to disqualify Ferland. In opposition to Chubb's motion, Cordova filed a certification from Dinnocenzo, which stated he was not a necessary witness. He "stipulate[ed]" he would "not testify as a fact witness at trial" and would "prove [Cordova]'s case and challenge Chubb's defenses through other evidence in the case and not [his] own testimony." Dinnocenzo later certified that the parties exchanged over 50,000 pages of documents during discovery, and except for a single phone call, his communications with Bernstiel were preserved in their written correspondence and the EUO transcripts. Dinnocenzo asserted Chubb had access to the information sought because Bernstiel participated "in those communications."

On March 21, 2025, after argument, the court issued an order accompanied by an oral decision denying Chubb's motion to disqualify

7

Dinnocenzo. It granted in part Cordova's motion, quashing Chubb's subpoena served on Dinnocenzo and issuing a protective order but denied her request to disqualify Ferland.

On appeal, Chubb argues the court erred in: denying its motion to disqualify Dinnocenzo as trial counsel; quashing its subpoena served on Dinnocenzo; and issuing a protective order preventing Dinnocenzo's disqualification because he is a necessary trial witness.

II.

We first address Chubb's contention that Dinnocenzo's disqualification is mandated and the governing principles surrounding the disqualification of counsel. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." Mauer v. State, 481 N.J. Super. 254, 262 (App. Div. 2025) (alteration in original) (quoting City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010)).

In cases where disqualification is sought under the Rules of Professional Conduct (RPC), specifically RPC 3.7, "the burden of establishing disqualification is on the movant." Escobar v. Mazie, 460 N.J. Super. 520, 529 (App. Div. 2019). "Disqualification of counsel is a harsh discretionary remedy which must be used sparingly." Mauer, 481 N.J. Super. at 262 (quoting Dental

8

Health Assocs. of S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022)). Such motions are "viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar, 460 N.J. Super. at 526. "Only in extraordinary cases should a client's right to counsel of his or her choice outweigh the need to maintain the highest standards of the profession." Van Horn v. Van Horn, 415 N.J. Super. 398, 415-16 (App. Div. 2010) (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 220 (1988)).

In reviewing a motion to disqualify counsel under the RPC, we are required to "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his [or her] counsel." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 273-74 (2012) (quoting Dewey, 109 N.J. at 218). "[T]o strike that balance fairly[,]" courts are required "to recognize and to consider that 'a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Mauer, 481 N.J. Super. at 262-63 (quoting N.J. Transit Corp., 210 N.J. at 274). In balancing these recognized competing interests, "[c]ourts must engage in a 'painstaking analysis of the facts.'" Dental Health Assocs., 471 N.J. Super. at 192 (quoting Dewey, 109 N.J. at 205).

The court reviews a motion to disqualify counsel based on his or her likely status as a trial witness pursuant to RPC 3.7, which states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

"The ABA annotated comments to RPC 3.7 instruct '[a] "necessary" witness under [RPC] 3.7 is one whose testimony is unobtainable elsewhere.'" Escobar, 460 N.J. Super. at 528 (first alteration in original) (quoting Annotated Model Rules of Prof'l Conduct R. 3.7 (2019)); see also J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 231 (App. Div. 2006) (concluding a lawyer was not a necessary trial witness based on a letter he wrote as the movant could introduce the evidence through the testimony of the letter's recipient); State v. Tanksley, 245 N.J. Super. 390, 393-94 (App. Div. 1991)

10

(determining defense counsel who witnessed a client's statement alongside the client's mother was not a necessary witness because the client "emphatically" testified to the truth of the facts within the statement, and no dispute existed regarding the statement's completeness or accuracy).

An exception to disqualification under RPC 3.7 exists if "disqualification of the lawyer would work substantial hardship on the client." RPC 3.7(a)(3). In determining whether a lawyer's disqualification would constitute "substantial hardship" to a client, courts examine "the amount of time and money invested by the client in his [or her] counsel, as well as . . . the proximity of the trial." Freeman v. Vicchiarelli, 827 F. Supp. 300, 304 (D.N.J. 1993); see also Dewey, 109 N.J. at 218-19 (denying a motion to disqualify under RPC 1.7 and 1.9 because counsel had expended over 1800 hours in case preparation and the proximity of trial rendered it too difficult for a new attorney to familiarize themselves with the matter).

Chubb argues the court erred in denying its motion to disqualify Dinnocenzo because he is a necessary trial witness under RPC 3.7. It argues Dinnocenzo "is the only person capable of testifying in support of Cordova's" bad faith and CFA violations claims. In support of disqualification, Chubb specifically avers Dinnocenzo's disqualification is required because:

Dinnocenzo's "testimony is unavailable elsewhere"; the motion to disqualify was timely filed and is ripe for a determination; and Cordova will suffer no substantial hardship.

Chubb's assertion alone that Dinnocenzo is a necessary trial witness does not automatically mandate his disqualification. We note "a mere representation . . . does not satisfy the threshold requirements of RPC 3.7, which specifies a likelihood that a lawyer will be a necessary witness." J.G. Ries & Sons, Inc., 384 N.J. Super. at 230. Stated another way, Chubb's assertion that Dinnocenzo is a necessary witness does not automatically require Dinnocenzo's disqualification, as the court must consider the other factors surrounding Dinnocenzo's representation of Cordova and Cordova's competing interests. Cf. Reardon v. Marlayne, Inc., 83 N.J. 460, 469 (1980) (stating that a court's review of an attorney's ethical responsibilities in representing a client cannot be done "with broad strokes").

Therefore, in considering Chubb's motion to disqualify Dinnocenzo, we must review whether the information Chubb seeks is reasonably obtainable through other means and whether Cordova would suffer substantial hardship from his disqualification. Cordova's complaint, which Chubb relies on in arguing that Dinnocenzo is a necessary witness, demonstrates Dinnocenzo

represented Cordova and Flores-Artieda at the EUOs that Bernstiel, Waltz, and later Ferland attended. All of the EUOs were transcribed. Thus, multiple Chubb representatives witnessed the EUOs that were preserved. Additionally, as asserted in Cordova's complaint and Chubb argued, Dinnocenzo and Bernstiel exchanged numerous emails and letters. As Dinnocenzo's May 6, 2022 letter to Bernstiel and her May 10 response illustrate, their communications were almost exclusively in writing. Dinnocenzo's letter noted that Bernstiel "instructed [him] that [their] communications must be in writing." The parties irrefutably preserved these exchanges. Thus, the information Chubb primarily references as necessary is reasonably available through other means.

Also relevant to Dinnocenzo's disqualification is his stipulation that he will not testify on Cordova's behalf at trial, which rebuts Chubb's contention that Cordova may only proceed on her claim based on Dinnocenzo's testimony. We note that in support of her bad faith and CFA claim, Cordova's complaint named third-party witnesses to Waltz's alleged deleterious investigation measures and Chubb's alleged inappropriate claim-adjusting tactics. It is clear Cordova's bad faith claim does not rely on the referenced letter communications alone.

13

The trial court properly examined the context of the evidence Dinnocenzo would allegedly testify to and determined the information was otherwise available. The court correctly observed that Dinnocenzo's knowledge was directly related to his "professional relationship" with Cordova and "developed from discovery." Dinnocenzo's information was learned through his "act[ions] as counsel for [Cordova] throughout the gathering of evidence—preparing incident paperwork, assist[ing] [her] throughout the examination process," and participating in "the underlying litigation." Regarding Chubb's alleged investigation misconduct, the court found "there [we]re other witnesses who could provide testimony, such as Bernstiel," Waltz, and Ferland. The record reveals that Cordova has personal knowledge of allegations supporting her bad faith and CFA violation claims.

Moreover, the record sufficiently refutes Chubb's argument that Cordova will not suffer substantial hardship. In May 2022, Cordova filed her complaint, placing Chubb on notice of her allegations, yet Chubb did not seek Dinnocenzo's disqualification until February 2025—over two and a half years later. The uncontested record indicates: Cordova and Flores-Artieda submitted their proof of loss to Chubb in 2019; Dinnocenzo represents her on a contingency fee basis; Dinnocenzo has represented Cordova for almost six

14

years; the parties have produced extensive discovery; and her complaint has been pending in the Law Division for over two years since Chubb filed its answer and counterclaim. While we recognize the parties have not concluded discovery, obtaining new counsel now—years after Cordova filed her claim and with such a voluminous record—would present her with a substantial hardship. Moreover, disqualifying Dinnocenzo would deprive Cordova of the right to choose her counsel. See Dewey, 109 N.J. at 218 (recognizing "a client's right freely to choose his [or her] counsel") (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)). For these reasons, we affirm the trial court's denial of Chubb's motion to disqualify Dinnocenzo.

III.

We turn to address Chubb's contention that the court erroneously quashed its subpoena served on Dinnocenzo and issued a protective order. Chubb argues the "subpoena is not unreasonable or oppressive, does not seek privileged information," and Dinnocenzo "is the only person who can provide" information supporting Cordova's bad faith and CFA claim. We discern the court did not abuse its discretion in granting Cordova's requested relief.

We begin by recognizing the well-established standard of review for an appeal of a trial court's discovery order. See Payton v. N.J. Tpk. Auth., 148

15

N.J. 524, 559 (1997) (citing Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 380 (1995)).  "We 'will not ordinarily reverse a trial court's disposition on a discovery dispute "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law."'"  Alt. Glob. One, LLC v. Feingold, 479 N.J. Super. 593, 599 (App. Div. 2024) (quoting Brugaletta v. Garcia, 234 N.J. 225, 240 (2018)).  Specifically, "[w]e 'review [a] trial court's decision to quash [a] subpoena pursuant to an indulgent standard of review.'"  Platkin v. Smith & Wesson Sales Co., 474 N.J. Super. 476, 489 (App. Div. 2023) (second and third alteration in original) (quoting In re Custodian of Recs., Crim. Div. Manager, 214 N.J. 147, 162 (2013)).  The court's legal interpretation of discovery rules are subject to de novo review, and "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Ibid. (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Our rules recognize that 'a party or . . . the person from whom discovery is sought' may 'for good cause shown' seek 'any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Trenton Renewable Power, LLC v.

<u>Denali Water Sols., LLC</u>, 470 N.J. Super. 218, 227 (App. Div. 2022) (quoting <u>R.</u> 4:10-3). "A court may grant the person from whom discovery is sought various forms of relief, including: '[t]hat the discovery not be had,' 'the discovery . . . be had only on specified terms and conditions,' or 'the scope of the discovery be limited to certain matters.'" <u>Ibid.</u> (alteration in original) (quoting <u>R.</u> 4:10-3(a), (b), and (d)).

Chubb contends the court wrongly applied the factors established in <u>Kerr</u>[2] regarding whether to quash its subpoena served on Dinnocenzo and grant a protective order. In <u>Kerr</u>, we recognized "the problems attorney depositions present" and that the party requesting to depose an adverse party's attorney has a heavier burden than generally exists under our court rules. 295 N.J. Super. at 158-59. We stated:

> [T]he request to depose a party's attorney itself constitutes presumptive "good cause" for a protective order under <u>R</u>[ule] 4:10-3(a). That presumption, however, may be overcome by the proponent of the deposition demonstrating legitimate discovery needs for the deposition. We are sensitive to the potential negative impact that too liberal a construction of our discovery rules may have on the adversarial process without such a presumption, especially where opposing counsel cannot demonstrate a legitimate need for the deposition. Because of the disruptive

---

[2] <u>Kerr v. Able Sanitary & Env't Servs., Inc.</u>, 295 N.J. Super. 147 (App. Div. 1996).

17

nature of attorney depositions, a party seeking to depose opposing counsel must demonstrate that the propriety and need for the deposition outweigh the possible disruptive or burdensome effects that the prospective deposition will have on the underlying litigation. Hence, to overcome the presumptive "good cause" we accord to the opponent of the deposition, the party requesting the deposition must show that the information sought is relevant to the underlying action and is unlikely to be available by other less oppressive means.

[Ibid. (footnote omitted).]

We further announced that trial courts should consider the following factors in evaluating the propriety and necessity of a party's deposition of an opposing counsel:

(1) the relative quality of the information purportedly in the attorney's knowledge, and the extent to which the proponent of the deposition can demonstrate the attorney possesses such information; (2) the availability of the information from other sources that are less intrusive into the adversarial process, i.e., the extent to which all other reasonable alternatives have been pursued to no avail; (3) the extent to which the deposition may invade work product immunity or attorney-client privilege; and (4) the possible harm to the party's representational rights by its attorney if called upon to give deposition testimony, i.e., the extent to which the deposition will affect attorney preparation or participation on behalf of the client.

[Id. at 159 (footnote omitted).]

18

Therefore, a court should issue a protective order if the party seeking counsel's deposition fails to meet the burden of demonstrating the information sought is relevant and not available through less disruptive means.

Applying these well-established principles to the present case, we discern no abuse of discretion in the court's quashing of Chubb's subpoena.

In reviewing the first two Kerr factors, the court correctly found, for the reasons already stated, that Dinnocenzo held no relevant information that was not otherwise available to Chubb. Regarding Kerr factor three, the court considered the work Dinnocenzo performed and the information Chubb seeks. The court found "[h]e was doing essentially" the work "an attorney does." Further, in quashing Chubb's subpoena, the court highlighted that "Dinnocenzo, the party being included as a fact witness" would "likely face the challenge of having to show his work product" and "client communications that [a]re otherwise protected from discovery." The court found it relevant that "Dinnocenzo never made any work product or other confidential communications public in this matter[ and] therefore ha[d] no reason to waive communication or work product" privilege.

Under Kerr factor four, Chubb cannot refute that Cordova would suffer harm from Dinnocenzo's disclosure of privileged information. "It is well-

19

settled under New Jersey law that communications between lawyers and clients 'in the course of that relationship and in professional confidence' are privileged and therefore protected from disclosure." Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013) (quoting N.J.S.A. 2A:84A-20(1) and N.J.R.E. 504(1)). "The attorney-client privilege 'recognizes that sound legal advice or advocacy serves public ends and rests on the need to "encourage full and frank communication between attorneys and their clients."'" Ibid. (quoting United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App. Div. 1984)). Further, "the confidentiality of communications between client and attorney constitutes an indispensable ingredient of our legal system." Id. at 11 (quoting In re Grand Jury Subpoenas Duces Tecum, 241 N.J. Super. 18, 27-28 (App. Div. 1989)).

For these reasons and those stated in our analysis of Chubb's challenge to the court's denial of Chubb's motion to disqualify Dinnocenzo, we discern no error in the court's protective order barring Chubb from seeking his disqualification. To the extent that we have not addressed Chubb's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20